60206. ANDREWS v. THE STATE.

DEEN, Chief Judge.

James Andrews brings this appeal following his conviction of first degree arson.

1. The defendant first contends that the trial court allowed the prosecution to improperly impeach its own witness over his objections. Code § 38-1801 provides in part: "A party may not impeach a witness voluntarily called by him, except where he can

show to the court that he has been entrapped by said witness by a previous contradictory statement . . ." "[F]or 'entrapment' under that Code Ann. § 38-1801 to exist, we will not require that the witness' testimony be a total 'surprise' nor that it be affirmatively damaging." *Wilson v. State,* 235 Ga. 470, 475 (219 SE2d 756) (1975). In this case, Mrs. Sutton, the owner of the burned mobile home, testified that she and the defendant had not been having any sort of trouble or disagreement shortly before the fire, and she denied that she had been trying to break up their relationship. The district attorney claimed that he was being entrapped and was permitted to cross examine the witness outside the presence of the jury to find out if she had told the officers investigating the crime a different story. She then admitted that she and the defendant were upset with one another. When the jury returned to the courtroom she testified that she had had a disagreement with him the day before the fire. As the witness corrected her testimony the district attorney did not attempt to impeach her with a prior inconsistent statement.

2. In his second enumeration of error Andrews claims that the court committed reversible error in that it failed to allow him to introduce evidence of a possible reward as to influence the testimony of a witness. As we are unable to find any reference in the transcript to an attempt by the defendant to introduce testimony of this type, and have not been correctly cited to a page in the transcript where he attempted to introduce such evidence, this enumeration is without merit. See *Justice v. Dunbar,* 152 Ga. App. 831 (264 SE2d 301) (1979).

3. Andrews also contends that the court committed error in that it allowed the prosecution to read into evidence a transcribed excerpt from a statement of a witness over his objection. The record shows that Travis Sutton made a statement which was taped and later transcribed by a secretary at police headquarters. This statement was read to the witness outside the presence of the jury. Thus Andrews' contention that the witness did not have an opportunity to examine the statements as outlined in *Pless v. State,* 142 Ga. App. 594 (236 SE2d 842) (1977), is without merit.

4. The defendant further claims that the trial court improperly stated before the jury that a witness testifying favorably to the defense had been told what to say. The record, however, shows that the defendant did not object to the trial court's questioning of Travis Sutton and that the trial court later charged the jury that if they felt that the court in passing upon any matter in their presence had expressed an opinion about the facts in each case, that each should eliminate such impression from his mind completely. We find no error.

5. In his fifth enumeration of error, the defendant claims that

the court erred in allowing the prosecution to begin a personal attack upon the defense counsel over the Rule of Sequestration. The transcript shows that defense counsel admitted talking to a witness who had not testified in the law library in the presence of a witness who had testified after the rule was invoked. The district attorney objected to the violation of the rule in open court after counsel's admission. The court informed counsel that he had violated the rule and that the state had every right to object to counsel's conduct. We find no error.

6. Andrews' claim that the trial court misstated evidence in the presence of the jury is not supported by citation to authority or argument and is deemed to be abandoned. Court of Appeals Rule 15 (c) (2).

7. Andrews contends that the court erred in failing to direct a verdict at the request of the defense.

The record shows that at about 3:30 or 4:00 p.m. on January 5, 1978, appellant drove to the mobile home of Teretha Sutton, with whom he had been living since 1975. Mrs. Sutton was at work, but her 11-year-old son, Travis, was at home. Appellant was carrying a container and went into the trailer; Travis went back out, and when he returned a short time later, he saw "some kind of liquid" in a container on the sofa; it smelled like gasoline. Appellant went to the rear of the trailer where the bedrooms and bathroom were located. When he returned he was lighting a cigarette with a cigarette lighter. He told Travis to take some beer and the dog to the car, and he (appellant) would take Travis to his grandmother's home. As Travis was going out the door he heard the fire alarm go off; as they left in the car, Travis turned around and saw smoke coming out of the trailer windows, and a window was already "busted out." Travis told appellant the trailer was on fire and appellant replied "No, it ain't."

The trailer was, in fact, on fire and was almost totally destroyed. A fire marshal testified that the fire started in the rear bedroom and spread to the living room where the sofa was located. As the sofa had a faint odor of a petroleum product, samples of the sofa material were sent to the crime laboratory; the sample contained some flammable substance, but the evidence did not identify the substance. The following morning the fire marshal was notified that an anti-freeze container which contained some clear liquid had been found. There is no evidence as to where the container was found, but the liquid was analyzed by the state crime lab and showed no sign of any flammable liquid.

Mrs. Sutton testified that she had been angry at appellant the night before the fire because he got drunk; however, they had not had

a "falling out" and no motive was established which might indicate why appellant would set fire to the trailer. Appellant acknowledged going to the trailer the afternoon of the fire and testified that he took a container of "Car-New" to the trailer to get rid of a stale urine smell on the sofa and living room carpet. (Appellant worked in a used car lot which used "Car-New" to give used cars a new car smell.) He also testified that he sprayed "Car-New" on the sofa and carpet, and that just prior to leaving the trailer he used the bathroom. He denied ever being in the bedroom where the fire started, and denied setting fire to the trailer.

All evidence as to actual commission of the crime is circumstantial in this case, but the state contends that the prior inconsistent statement of Travis Sutton that appellant poured a liquid on the sofa and in his mother's bedroom is evidence of appellant's guilt. However, the state used the prior inconsistent statement to *impeach* Travis (a state's witness), and it is well settled in Georgia that "[a] prior contradictory statement is admissible for the purpose of impeaching a witness shown to have made it, but is not in itself probative evidence which will tend to prove any fact therein contained." *Loomis v. State,* 78 Ga. App. 336, 357 (7) (51 SE2d 33) (1948); *Mathis v. State,* 210 Ga. 408 (1) (80 SE2d 159) (1954); *Lewis v. American Road Ins. Co.,* 119 Ga. App. 507, 509 (1) (167 SE2d 729) (1969); *Dickey v. State,* 240 Ga. 634, 636 (242 SE2d 55) (1978).

The historical basis of this rule is that such statements constitute hearsay evidence and are not within any exceptions to the hearsay rule. McCormick on Evidence, § 34, p. 67 (1972). The Supreme Court of the United States has explained the two opposing positions on use of this rule as follows. "The orthodox view, adopted in most jurisdictions, has been that the out-of-court statements are inadmissible for the usual reasons that have led to the exclusion of hearsay statements: the statement may not have been made under oath; the declarant may not have been subjected to cross-examination when he made the statement; and the jury cannot observe the declarant's demeanor at the time he made the statement. Accordingly, under this view, the statement may not be offered to show the truth of the matters asserted therein, but can be introduced under appropriate limiting instructions to impeach the credibility of the witness who has changed his story at trial.

" In contrast, the minority view adopted in some jurisdictions and supported by most legal commentators and by recent proposals to codify the law of evidence would permit the substantive use of prior inconsistent statements on the theory that the usual dangers of hearsay are largely nonexistent where the witness testifies at trial.

'The whole purpose of the Hearsay rule has been already satisfied (because) the witness is present and subject to cross-examination (and) (t)here is ample opportunity to test him as to the basis for his former statement.' " California v. Green, 399 U. S. 149, 154-155 (90 SC 1930, 26 LE2d 489) (1970). See also III A Wigmore, § 1018. In regard to whether use of a prior inconsistent statement violated the Confrontation Clause of the Constitution of the United States (Sixth Amendment, U. S. Const.; Code Ann. § 8-106), the Supreme Court stated: "Viewed historically, then, there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." Id., at 158.

It appears to us that the minority view is the better rule to follow in circumstances similar to this case, since Travis Sutton was testifying and subject to full cross-examination concerning his prior inconsistent statement. However, Georgia follows the orthodox view, and until such time as our Supreme Court chooses to reevaluate this view, we are bound by the rule as enunciated in *Mathis* and *Dickey,* supra.

Turning to an evaluation of the evidence excluding the prior inconsistent statement, we note, as stated previously, that all evidence relating to the commission of the crime was circumstantial. However, two witnesses testified that appellant was alone in the mobile home, that he sprayed some "Car-New" on the sofa and rug, that it smelled like gasoline, that appellant held a burning cigarette, and that the fire began less than a second after appellant left. One witness testified, "I told him the trailer was on fire," and appellant said, "No, it ain't." In view of this evidence, we find that it was not error for the trial court to deny the defendant's motion for a directed verdict of acquittal. "Only where there is no conflict in the evidence and a verdict of acquittal is demanded as a matter of law is it error for a trial court to refuse to direct a verdict of acquittal. [Cits.]" *Vilicic v. State,* 152 Ga. App. 207, 208 (262 SE2d 502) (1979).

8. The defendant also contends that the trial court erred in allowing the prosecution to badger him on cross-examination by asking numerous repetitive questions over objections made by his counsel. We find that no such badgering occurred. The state was properly exercising its right to a thorough and sifting cross-examination. The trial court did not abuse its discretion in overruling the defendant's objection.

9. In his final enumeration of error, Andrews complains that the trial court erred in allowing the prosecution to introduce hearsay testimony from the district attorney after the evidence had been

closed. The record shows that the state sought to call a rebuttal witness after the state had completed its cross-examination of the defendant. The defendant objected to the state calling a witness not on the list of witnesses previously given to him by the state. The defendant's attempt to claim for the first time on appeal that the district attorney was permitted to give hearsay testimony cannot be considered by this court. *Bell v. State,* 144 Ga. App. 692 (242 SE2d 345) (1978).

*Judgment affirmed. McMurray, P. J., Shulman, Banke and Carley, JJ., concur. Quillian, P. J., Smith, Birdsong and Sognier, JJ., dissent.*

SUBMITTED JULY 7, 1980 — DECIDED DECEMBER 5, 1980 —

*Floyd H. Farless,* for appellant.
*F. Larry Salmon, District Attorney,* for appellee.

SOGNIER, Judge, dissenting.

I respectfully dissent. All evidence as to the actual commission of the crime is circumstantial. The state contends that the prior inconsistent statement (in writing) of Travis Sutton that appellant poured a liquid on the sofa and in his mother's bedroom is evidence of appellant's guilt. However, the state used the prior inconsistent statement to *impeach* Travis (a state witness), and it is well settled in Georgia that "[a] prior contradictory statement is admissible for the purpose of impeaching a witness shown to have made it, but is not in itself probative evidence which will tend to prove any fact therein contained." *Loomis v. State,* 78 Ga. App. 336, 357 (7) (51 SE2d 33) (1948); *Mathis v. State,* 210 Ga. 408 (1) (80 SE2d 159) (1954); *Lewis v. American Road Ins. Co.,* 119 Ga. App. 507, 509 (1) (167 SE2d 729) (1969); *Dickey v. State,* 240 Ga. 634, 636 (242 SE2d 55) (1978).

Turning then to an evaluation of the evidence excluding the prior inconsistent statement, I note, as stated previously, that all evidence relating to commission of the crime was circumstantial. In my opinion such evidence falls far short of establishing appellant's guilt of arson; at most, it shows that appellant was present in the trailer shortly before the fire started.

This court has held that "it is clear that in this state 'to warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused.' Code § 38-109; [cit.]." *Vaughn v. State,* 136 Ga. App. 54, 56 (220 SE2d 66) (1975). "In making a determination of whether any other

reasonable hypothesis exists, the defendant's explanation must be taken into consideration insofar as it is consistent with the circumstantial evidence properly admitted. [Cits.]" *Elam v. State,* 125 Ga. App. 427, 430 (187 SE2d 920) (1972). Accord, *Jackson v. State,* 152 Ga. App. 441, 443 (263 SE2d 181) (1979).

Our court has recognized that it is often not possible to prove arson by direct evidence or to directly connect the defendant with the commission of the crime; hence, " ' "[t]o sustain a conviction, it is not required that the evidence exclude every possibility or every inference that my be drawn from proved facts. It is only necessary to exclude *reasonable* inferences and *reasonable* hypotheses which may be drawn from the evidence under all the facts and circumstances surrounding the particular case." [Cits.]' [Cit.]" (Emphasis supplied.) *Smith v. State,* 85 Ga. App. 129, 133 (2) (68 SE2d 393) (1951). Accord, *Reese v. State,* 94 Ga. App. 387 (94 SE2d 741) (1956); *Smith v. State,* 122 Ga. App. 882 (179 SE2d 261) (1970); *Whitten v. State,* 143 Ga. App. 768 (240 SE2d 107) (1977). But see *Cook v. State,* 146 Ga. App. 353 (246 SE2d 347) (1978).

Applying the principles set forth above to the instant case, the most that the evidence establishes is that appellant was present in the trailer either at the time, or shortly before, the fire started and that he sprayed some "Car-New" on the sofa and rug in the living room. There is no evidence that "Car-New" is flammable, and there is no evidence that appellant was ever in the bedroom where the fire marshall testified, unequivocally, that the fire started. Finally, there is no evidence as to what started the fire, and the fire marshal testified he could not come to an opinion as to what started the fire. In short, there is no evidence that the fire was set. Thus, "the evidence, though entirely circumstantial, was sufficient to raise a grave suspicion of the defendant's guilt of the offense charged; yet it was, nevertheless, insufficient, when given its strongest intendment against him, to exclude every other reasonable hypothesis save that of his guilt . . ." *Redwine v. State,* 207 Ga. 318, 324-325 (61 SE2d 481) (1950). In the instant case appellant presented a reasonable hypothesis other than that of his guilt, particularly when we are required, as here, to disregard the impeaching statement of the witness, Travis Sutton. Accordingly, I disagree with the majority. I would reverse and grant appellant's motion for a directed verdict.

I am authorized to state that Presiding Judge Quillian and Judge Smith and Judge Birdsong concur in this dissent.