## 62179. PRICE v. THE STATE.

McMurray, Presiding Judge.

The grand jury of Douglas County returned an indictment in three counts against the defendant. Count 1 charged the defendant with the offense of aggravated battery upon the person of Ann Whittle by throwing boiling water on her. Count 2 charged the defendant with the offense of aggravated assault in that he did unlawfully assault Ann Whittle with a butcher knife. Count 3 charged the defendant with the offense of aggravated assault in that he did unlawfully assault J. C. Whittle with a butcher knife. Defendant was found guilty on all three counts. His motion for new trial based on the general grounds was denied. Defendant appeals. *Held:*

1. The state's evidence is that the defendant was a guest in the home of his sister and her husband, Ann and J. C. Whittle. One evening the defendant received his sister's permission to boil an egg. He filled a boiler full of water, put an egg in it and put it on the stove. Defendant was out of the kitchen and the water began boiling over, so the sister got up and turned the heat down. Defendant returned and began asking his sister whether she thought the egg was boiled. She answered affirmatively because the water had been boiling over and she had turned the heat down. Defendant then took the boiler off the stove and headed into the den where his sister was sitting and stated to her that he wanted her to look at the egg and see if it was boiled. His sister responded that she could not look at an egg and tell if it was boiled. By then defendant was standing in front of her and asked her to look at the egg. His sister said the egg was done because the water had been boiling that hard. Defendant then "started dumping the water out directly on top of" the sister. The sister jumped up and followed the defendant or either the defendant pulled her by her housecoat (the testimony is uncertain on this point) back toward the kitchen, the defendant still pouring water on the sister. The boiling water poured on the sister resulted in severe injuries requiring several weeks of hospitalization, plastic surgery, and permanent scarring.

Defendant withdrew to the kitchen and obtained a butcher knife

with which he advanced on his sister who retreated. She asked him what he was doing and why. Defendant never answered. Defendant continued advancing on his sister who continued to retreat until her husband (J. C. Whittle), aroused by the outcries of his wife, intervened. The husband testified that defendant "had one hand reaching for her, and the butcher knife was headed right for her chest." Defendant and his sister's husband, J. C. Whittle, scuffled. Defendant "was struggling to get the butcher knife up to" the sister's husband, J. C. Whittle, and the struggle was interrupted when defendant's sister struck defendant about the head with a ceramic statue, disabling him, causing defendant to fall limp for a moment before tightening his grip on the knife "[t]rying to come up from the floor." The sister's husband managed to get the butcher knife away from the defendant and told his wife to go get help. Defendant's sister ran to a neighbor's house to call law enforcement officers and her husband was able shortly thereafter to escape from the house.

The defendant testified, denying his identity, asserting he was Jerry Green and not Glen Dallas Price, stating that he did not know Ann or J. C. Whittle and had never seen either of them before shortly prior to the trial. The state responded with rebuttal evidence as to the defendant's identity and mental competence.

After a careful review of the trial transcript and record we find, and so hold, that a rational trier of fact (the jury in the case sub judice) could reasonably have found the defendant guilty beyond a reasonable doubt of the offense of aggravated battery upon Ann Whittle and the offenses of aggravated assault upon Ann Whittle and J. C. Whittle. *Driggers v. State,* 244 Ga. 160, 161 (1) (259 SE2d 133); *Moses v. State,* 245 Ga. 180, 181 (1) (263 SE2d 916); *Sanders v. State,* 246 Ga. 42 (1) (268 SE2d 628); *Jones v. State,* 154 Ga. App. 806, 807 (1) (270 SE2d 201).

2. Defendant's conviction of all of the charges against him are not prohibitive nor inconsistent with the provisions of Code Ann. § 26-1303 (Ga. L. 1968, pp. 1249, 1281), as defendant has not been convicted of both an assault with intent to commit a crime and with that completed crime.

3. Defendant's remaining enumerations of error deal with the trial court allowing the testimony of certain witnesses called on rebuttal. As pointed out in Division 1, the defendant testified, denying his identity, asserting he was Jerry Green and not Glen Dallas Price, stating that he did not know Ann or J. C. Whittle and had never seen either of them before shortly prior to the trial. After the state had presented several rebuttal witnesses and immediately prior to the state calling Dr. Martin Youngleson defendant objected "to any opinion testimony in rebuttal on the grounds the defense has

not introduced any evidence relative to any expert witnesses relevant to any opinions." Now the defendant seeks to argue by brief that Dr. Youngleson was not on the list of witnesses presented to the defendant after demand had been made for a list of witnesses. No such objection was made at the trial with reference to Dr. Youngleson's testimony here, hence, if there be any error with reference to the issue of whether he was or was not on the list of witnesses, same was waived. See *Smith v. State,* 142 Ga. App. 406 (236 SE2d 107); *Stafford v. State,* 146 Ga. App. 49 (1) (245 SE2d 361). Further, calling an unlisted witness in rebuttal is not error. See *Prevatte v. State,* 233 Ga. 929, 930 (5) (214 SE2d 365); *Nunnally v. State.* 235 Ga. 693, 707 (13) (221 SE2d 547); *Mize v. State,* 240 Ga. 197, 199 (6) (240 SE2d 11).

As to the objection made that "the defense has not introduced any evidence relative to any expert witnesses" hence there was nothing to rebut, this objection is not meritorious inasmuch as the defendant had raised an issue as to his identity and denied any knowledge of other individuals involved in this trial, thus creating an impression of mental illness. Consequently, the state was authorized to offer rebuttal witnesses with reference to his mental condition and in calling Dr. Youngleson as an expert witness relevant to same. The trial judge is clothed with a very broad discretion in allowing additional evidence at any stage of a trial, and no abuse of discretion has been shown here. See *Johnson v. State,* 164 Ga. 47 (2) (137 SE 553); *Smith v. State,* 126 Ga. 803, 804 (3) (55 SE 1024); *Flynt v. State,* 153 Ga. App. 232, 244 (3) (264 SE2d 669). This enumeration of error is not meritorious.

4. As to the witness Collins E. Walton, defendant contends on appeal that this witness should not have been allowed to testify because at trial he was allegedly serving in a dual capacity as both bailiff and prosecutor and had on occasion conversed with the jury and transported defendant to and from the jail. Although unsupported by argument in defendant's brief this enumeration of error also contends that this witness should not have been allowed to testify because he was not listed as a witness for the state after demand had been made for a list of witnesses. Defendant's contention in regard to the absence of this witness from the list of witnesses supplied by the state is not supported by argument and citation of authority, hence it must be deemed abandoned. Rule 15 (c) (2) (Code Ann. § 24-3615); *Andrews v. State,* 156 Ga. App. 734, 736 (6) (275 SE2d 782).

Neither of these contentions was asserted in the trial court. These contentions may not be raised for the first time on appeal. *Stafford v. State,* 146 Ga. App. 49 (1), supra.

Furthermore, there is no evidence in the record submitted from the trial court suggesting that this witness in fact acted as a bailiff during the trial of the case. We may not rely upon factual assertions contained only in the briefs of the parties. *Raymond v. State,* 146 Ga. App. 452, 453 (2) (246 SE2d 461); *Young v. State,* 144 Ga. App. 712 (1) (242 SE2d 351).

5. The witness William Franklin Jones, was a jailer working for the sheriff's office, and during the period of defendant's incarceration prior to trial this witness had repeated contact with the defendant. His testimony in regard to statements of the defendant while incarcerated was admitted over the defendant's objection that the state had not laid the proper foundation for this inquiry. The record shows no application of the safeguards which under the decision of the United States Supreme Court in Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694), must be provided a criminal defendant prior to custodial interrogation. There is no doubt that the defendant was in custody at the time of his conversations with the jailer. The remaining question is as to whether the conversations which resulted in testimony by the jailer as to defendant's remarks, including defendant's statement that, "you know, if he [defendant] had it to do over again, he'd kill both of them," were "interrogation." According to the jailer's testimony, this statement was made at the time the defendant was being booked and various inquiries were being made as to defendant's age, address, social security number and related information. The booking procedure which might be described in the language of the decision of Rhode Island v. Innis, 446 U. S. 291, 301 (100 SC 1682, 64 LE2d 297), as words and actions normally attendant to arrest and custody was not the functional equivalent of questioning. However, the jailer also testified as to asking the defendant a question about the offense with which he is charged. When defense counsel objected to inquiries as to statements made regarding the offense with which defendant is charged the trial court first sustained this objection but then permitted the state to introduce this evidence "only for the purpose of showing the course of conduct of the defendant in this particular action, and not for any validity or truthfulness of any statement that he might have made." Subsequently, during the continuation of the direct examination of the witness Jones, defense counsel again made the same objection. The trial court ruled, "I'll allow the answer only for purposes of showing that he [defendant] understood what was happening at the time, but not for the purposes of showing any truthfulness of any statements made or any implication of his involvement." The jury was subsequently instructed "not to consider the truth or the validity of the statements made, but just — they were admitted for the

purpose of showing that the defendant knew or understood what was being said, or might have known or understood what was done at a certain time. You're not to consider them for any other purpose."

Rhode Island v. Innis, 446 U. S. 291, supra, in expanding upon the definition of interrogation as contained within the decision of Miranda v. Arizona, 384 U. S. 436, supra, explains that any practice that the police know is reasonably likely to evoke an incriminating response from the suspect amounts to interrogation. In the case sub judice the direct inquiries by the jailer are clearly of a nature that should be reasonably expected to evoke an incriminating response from a suspect. Additionally, we note that the rule set forth in Miranda v. Arizona, 384 U. S. 436, supra, prohibits the utilization by the prosecutor of any remarks inculpatory or exculpatory where these remarks are elicited by custodial interrogation lacking in the refined procedural safeguards for the defendant's constitutional protections usually described as the Miranda warnings. As we would reject any suggestion that the remarks elicited by the jailer were the unforeseeable result of his words and actions and as there is no indication that defendant was given the Miranda warnings prior to this custodial interrogation we must conclude that the statements made by the defendant in response to the jailer's inquiries were obtained in violation of the decision in Miranda v. Arizona, 384 U. S. 436, supra.

The state argues that the statements involved were admissible, even though no Miranda warnings were given, for the purpose of impeachment. Harris v. New York, 401 U. S. 222 (91 SC 643, 28 LE2d 1); *Colbert v. State,* 124 Ga. App. 283, 285 (183 SE2d 476) and *Gale v. State,* 138 Ga. App. 261 (226 SE2d 264). However, compare *Askea v. State,* 153 Ga. App. 849, 853 (5) (267 SE2d 279). We hold, however, that the trial court's instructions to the jury as to this testimony regarding defendant's statements while in custody comply with the requirement that the jury be expressly instructed that the evidence is admitted for the purpose of impeachment only. Although the trial judge did not use the term of art, "impeachment," a review of his instructions to the jury indicates that the substance of his instructions to the jury was that the evidence was admitted solely for the purpose of impeachment, that is, as contradicting defendant's testimony at trial on the issue of his knowledge of his identity and the implications as to his mental status arising therefrom. See Code § 38-1802. There is no merit in this enumeration of error.

*Judgment affirmed. Quillian, C. J., and Pope, J., concur.*

DECIDED SEPTEMBER 14, 1981 —

*Leo W. Clifton, Sr.,* for appellant.
*William A. Foster III, District Attorney, Frank C. Winn, Assistant District Attorney,* for appellee.