## 67837. INGRAM v. THE STATE.

BIRDSONG, Judge.

Alex Ingram was tried and found guilty of aggravated battery. The offense involved the shooting of Nathaniel Benton in the back of the head, during a general melee outside a nightclub in DeKalb County where members of several "social" clubs had gathered for a party. The evidence shows generally that appellant Alex Ingram was president of his club, the Gigolos; also present at the club were members of the Gigolos, and the Gigolettes, nearly all of whom were close relatives of Alex Ingram; and members of clubs called the Truckers, Heavy Metal, the Mahogany Ladies, the Foxy Ladies, and the Scavengers. Of the ten to thirty or more persons who were present outside the club when the victim was shot, only two persons were willing to describe the events and give their names to investigating officers.

One of these witnesses positively identified Alex Ingram as the person who shot Nathaniel Benton; the other witness identified Alex Ingram in a photographic lineup as having been "involved in the incident." Alex Ingram denied having had a weapon of any kind at any time during the incident; but his wife testified that during the fight she gave her husband Alex the keys to the car and he got a gun from the car, that he put the gun in his back pocket and did not take it out of his pocket until the victim was already lying on the ground. The fight had originated in the club when one Ricky Langston attempted to interrupt the appellant's brother Donnie Ingram from dancing with a certain woman. Donnie Ingram was observed to have a knife; ultimately the fight moved outside and several Gigolos followed. One member of the Gigolos testified that its members protect each other. Nathaniel Benton testified that in the general fight, he and his cousin Ricky Langston had no weapons and that it was all the Gigolos fighting against him and Ricky. Based on the statements of the witnesses who spoke to the investigator, the police called Alex and Donnie Ingram's mother and asked that they turn themselves in, which they did.

The rest of the trial evidence, particularly the defense (whose witnesses were nearly all Gigolos or Gigolettes, brothers, sisters, nieces, aunts of Alex Ingram) describes the incident so that the witnesses might as well have been describing several different fights in another county. Some witnesses said Alex Ingram did not shoot Nathaniel Benton; some said they did not know who shot Nathaniel Benton. Some said that many people were shooting guns. Alex Ingram's wife brought the police a .38 caliber gun which she said was the only gun he owned; ballistics tests proved that four bullets which damaged a car in the club parking lot did not come from that gun.

The bullet that felled Nathaniel Benton is still lodged in his

brain, despite eight hours of surgery. He remained in a coma for several weeks; he lost the use of his right arm and right leg, sees poorly in his right eye, and suffers some loss of memory. Alex Ingram was convicted and, based on this and previous felonies, was sentenced to twenty years to serve. He appeals. *Held*:

1. Appellant seeks a reversal and new trial based on newly discovered evidence. Post trial affidavits were submitted by appellant's brother Donnie, his sister June Wingo, his nephew Bobby Wingo, and Charles Durden, an employee of the club. Donnie testified at trial; the others did not. Donnie now remembers, although it apparently escaped his memory at trial, that the night after the shooting a man named Rico Roberson told him that he (Rico) had shot Nathaniel Benton. Appellant's sister June Wingo (whose daughter Alexis did testify at trial) stated that a man named Rico used her .22 caliber pistol to shoot Nathaniel Benton, and told her he had shot Benton, and showed Tracy Ingram and others how he had done it. (Tracy Ingram, appellant's sister, testified at trial and did not mention a man named Rico.) Also June Wingo said she saw appellant talking with Charles Durden during the shooting. Appellant's nephew Bobby Wingo (son of June and brother of Alexis) affirmed that he saw Rico take a gun from a car and then heard a gunshot; he was later told by Rico that he (Rico) had shot June Wingo's gun. This affiant also saw appellant talking with Charles Durden during the shooting. Charles Durden, the nightclub doorman, swore by affidavit simply that he was talking with appellant when he saw Nathaniel Benton fall, that appellant's lawyer had not contacted him and he was in Savannah when the case was tried.

None of these affidavits constitutes newly discovered evidence competent to reverse the conviction and require a new trial. Where they recite the self-incriminating declarations of the man named Rico, they are hearsay and inadmissible and cannot form the basis of new evidence producing a new trial. *Timberlake v. State*, 246 Ga. 488, 492 (271 SE2d 792). As for every other statement made which might otherwise have been good evidence at a first trial, it is clear that the evidence is not newly discovered in that the slightest diligence would have produced it in the first place. Alexis Wingo testified at trial, but her mother, appellant's sister June, who lives at the same address, only later produced the .22 caliber gun and said that Rico used it. Bobby Wingo, who lives on the same street at the same address as his uncle Donnie, and at the same address as his aunt Tracy Ingram (both of whom testified), only later gives his version of evidence. From questions asked by the defense attorney at trial, it is clear that both June Wingo and Charles Durden (whose testimony is cumulative) were known to the defense. "The mere assertion that the evidence could not have been discovered by ordinary diligence is insuffi-

cient;" there must be a factual showing that this evidence could not have been discovered by ordinary diligence. *Timberlake,* supra, pp. 491-492. It reasonably appears on the face of this record that all of these witnesses were easily discoverable by only the slightest diligence of the defense; and there is no showing otherwise. The standards for grant of a new trial based on newly-discovered evidence (see *Timberlake,* supra) are not met in this case.

2. Appellant asserts that the trial court should not have summarily denied his post-trial motion to search the body of Nathaniel Benton and remove the bullet from his brain for comparison with the .22 caliber gun which the appellant's sister and nephew now (after trial) say was used by Rico to shoot Benton. This enumeration has no merit, in light of our implicit holding in Division 2 that the gun itself does not meet the standards of newly-discovered evidence sufficient to require a new trial or authorize a post-trial search based on speculation that the bullet in Benton's brain is a .22 caliber and came from that gun. We think, most importantly, that since the doctors saw fit to leave the bullet in the victim's brain after eight hours of surgery, the court of law would require a very great degree of legal justification to entertain even a threshold inquiry into its removal. We are not even confronted with the question in this case.

3. The verdict is sustained by the evidence. Appellant was positively identified as the person who shot Nathaniel Benton and as being "involved in the incident" by the only two witnesses, of all persons who witnessed the event, who would step forward and assist the investigators. The testimony of the witness who stated he saw appellant shoot Benton was not impeached or directly brought into question by the defense. While appellant denied having a gun at all, appellant's wife, though seeking to exonerate him by saying she was holding his hand when Benton was shot, admitted appellant had gone to their car and gotten a gun, and that appellant had removed the gun from his back pocket (but only after the man was lying on the ground). The credibility of witnesses is the threshold inquiry of any legal investigation, and is always a jury question (*Harris v. State,* 236 Ga. 242 (223 SE2d 643)); on appeal we will not disturb the jury finding unless it is insupportable as a matter of law. *Lewis v. State,* 149 Ga. App. 181 (254 SE2d 142). Accepting the jury's determination as to credibility (and we are without authority to reject it), the evidence in this case is such that a reasonable trier of fact could find appellant's guilt beyond a reasonable doubt. *Boyd v. State,* 244 Ga. 130, 132 (259 SE2d 71); *Turner v. State,* 151 Ga. App. 169, 170 (259 SE2d 171).

*Judgment affirmed. Quillian, P. J., and Carley, J., concur.*

DECIDED MARCH 9, 1984.

*Murray M. Silver,* for appellant.
*Robert E. Wilson, District Attorney, Michael M. Sheffield, Assistant District Attorney,* for appellee.