45264. NEWLAND v. THE STATE.
(366 SE2d 689)

GREGORY, Justice.

The defendant, Robert L. Newland, was convicted of malice murder and aggravated assault with intent to rape Carol Sanders Beatty. The jury found the murder was committed while the defendant was engaged in the commission of an aggravated battery, OCGA 17-10-30 (b) (2), and that the offense of murder was outrageously and wantonly vile, horrible and inhuman in that it involved torture and an aggravated battery to the victim, and depravity of mind of the defendant, OCGA § 17-10-30 (b) (7). The jury recommended that the defendant be sentenced to death. The trial court sentenced the defendant to twenty years for the conviction of aggravated assault with intent to rape, to run consecutively to the death sentence.[1]

---

[1] The defendant was tried August 10 through August 15, 1987. The jury returned its

The evidence at trial showed that on May 30, 1986, the defendant and Peggy Beggs, with whom he resided, had "two or three drinks" before dinner, then went to visit the victim who lived across the street from them. There they shared a bottle of vodka with the victim. Beggs testified that the defendant left the victim's home about an hour before Beggs did. Beggs thought that the defendant had gone to their home because he had too much to drink, but when she returned home he was not there. The defendant arrived a short time later. He did not have on a shirt and was covered in scratches. The defendant told Beggs he had fallen in some bushes. When Beggs went to get some ointment for the defendant she noticed police vehicles across the street at the victim's house. Beggs investigated and learned that the victim had been attacked with a knife. She returned to her home and told the defendant "something terrible" had happened to the victim. The defendant responded by saying his truck was missing and he did not know where it was. Beggs testified that the defendant's behavior was "unusual," and she left the house because she did not want to be around him. When Beggs came home the police were there. They arrested her along with the defendant, first charging them with aggravated assault, and later, with murder after the victim died.[2]

Beggs testified that the defendant always carried a small pocketknife on his person.

The defendant initially gave two statements to police in which he denied knowing anything about the attack on the victim. After he learned that Beggs was to be charged with the murder of the victim, he announced his desire to give an additional statement to police, maintaining that Beggs had nothing to do with the crime. The defendant stated he remembered being with Beggs at the victim's home, but could not recall what happened after he left them there. He remembered returning to the victim's house and calling the victim out into the backyard. The defendant told the victim he wanted to kiss her. "I tried to make a move on her, and then she pushed me away, and we got in a fight and she scratched me and I went crazy. . . ." The victim said she would tell Beggs if the defendant did not leave her alone. The defendant stated he again attempted to kiss her. He stated, "I grabbed her and I threw her down and somehow the knife came in my hand and started stabbing her. . . . I had no reason for it . . . I just went crazy. She didn't do anything to me." The defendant

verdict as to the sentence of death on August 15, 1987. The defendant's motion for new trial was denied on September 2, 1987. The case was docketed in this court on December 4, 1987, and orally argued to this court on February 8, 1988.

[2] The murder charge against Beggs was later reduced to a charge of giving false statements during a police investigation.

stated that he then went home, hosed himself off in his backyard, changed into some clothes he had stored in the shed and went to bed. The defendant told police he had consumed three beers and "the better part of over a half bottle of vodka," and believed the influence of alcohol caused him to kill the victim. He stated he used a pocketknife to kill her, and had thrown it away, but could not remember where. The murder weapon was never recovered.

The victim suffered four slash wounds to the throat including a four-inch gash which completely exposed her windpipe and left her unable to speak. The victim had a number of stab wounds to the abdominal area which exposed her intestines. A police officer who observed the victim at the hospital testified her face was so caked with blood he could not tell what she looked like. Emergency surgery was performed and the victim lived for 22 hours before succumbing to death due to the loss of blood.

Forensic evidence showed that the defendant's clothes bore blood stains which matched the victim's blood type. The victim had human skin scrapings under her fingernails, but of an amount too small to type. A police officer testified that at the time of arrest the defendant was scratched "pretty bad" on his chest, arms and face.

1. The defendant argues that the evidence does not support his conviction of malice murder. We hold that a rational trier of fact could have determined beyond a reasonable doubt from the evidence recited above that the defendant is guilty of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The defendant complains that the trial court should have granted his motion for directed verdict as to the charge of aggravated assault with intent to rape. We do not agree. There was evidence from which the jury could have determined beyond a reasonable doubt that the defendant is guilty of aggravated assault with intent to rape. *Jackson v. Virginia*, supra; *Humphrey v. State*, 252 Ga. 525 (1) (314 SE2d 436) (1984).

3. Under the Unified Appeal Procedure this court is charged with the duty to "review each of the assertions of error timely raised by the defendant during the proceedings in the trial court regardless of whether or not an assertion of error was presented to the trial court by motion for new trial, and regardless of whether error is enumerated in the Supreme Court." 252 Ga. A-28 (1984). Our review of the record shows that the defendant objected at trial to the admission of photographs taken of the victim's throat wounds after an emergency tracheotomy was performed in an attempt to save her life. Due to the urgency of surgery there was no opportunity to take photographs of the victim's wounds prior to the tracheotomy. The photographs admitted in evidence incidentally depicted sutures of the throat wounds made during surgery. The defendant objected to the photographs

under *Brown v. State*, 250 Ga. 862, 867 (302 SE2d 347) (1983), because the wounds had been "changed by authorities." The trial court conducted a hearing on the admissibility of the photographs in which medical personnel testified that because the wounds had been closed, they were less "grotesque" following the surgery than they had been prior to the surgery. The trial court then admitted the photographs to identify and show the location of the wounds. The defendant did not raise this issue on appeal.

We hold that the trial court did not err in admitting the photographs for the purposes stated. While there was an alteration of the wounds "by authorities," this was done in an attempt to save the victim's life. Our concern in *Brown*, supra, was to prevent photographs depicting the mutilation of the victim's body during an autopsy from being admitted in evidence unless "necessary to show some material fact which becomes apparent only because of the autopsy." 250 Ga. at 867. In *Heard v. State*, 257 Ga. 1 (354 SE2d 115) (1987), an emergency tracheotomy was performed in an attempt to save the victim's life. The state offered in evidence photographs which showed powder burn marks on the victim's ear resulting from a gunshot wound. The incision made during the tracheotomy was clearly visible in these photographs, and we held that since the photographs could have been cropped, the admission of photographs of this surgical incision was gratuitous and error under *Brown*.[3] In the case before us the concerns of *Brown* and *Heard* are not present. The undisputed evidence shows that the alteration to the wound was made in an attempt to save the victim's life, and left her in a less "grotesque" state than did the defendant's attack. Under these circumstances the trial court did not err in admitting the photographs to show the location and identity of the victim's wounds.

4. The defendant appeals the denial of his motion in limine to exclude the testimony of police officer, Greg McMichael, on the ground that it was hearsay. A doctor who treated the victim testified that he summoned McMichael to the victim's bedside when it became apparent she was attempting to communicate something. As stated above, the attack left the victim unable to speak. At the hearing on the motion in limine, McMichael testified he asked the victim who had attacked her and read her lips to say the name, "Bob." He then sounded out the name, "Bob" and asked the victim if this was correct. She nodded her head affirmatively. When asked the last name of her assailant, the victim mouthed a word McMichael could not understand. He then asked the victim if the name began with an "A." She

---

[3] We held, however, that the error was harmless because of the overwhelming evidence against the defendant.

shook her head negatively. McMichael proceeded in this manner down the alphabet until he asked about the letter, "N." The victim "nodded her head vigorously" and squeezed his hand. By this procedure McMichael was able to elicit affirmative shakes of the head from the victim to the letters, "N E W L A." McMichael then asked the victim if the last name was "Newland." The victim "nodded her head again very vigorously," and squeezed McMichael's hand.

The state urged the admissibility of this testimony under both the dying declaration exception and the res gestae exception to the hearsay rule. The trial court ruled that the testimony could not be admitted under the dying declaration exception because the victim was not aware she was in the article of death. However, the trial court concluded that the testimony was admissible under the res gestae exception.

We find it unnecessary to determine whether the res gestae exception controls the admissibility of this evidence because we find that even if there was error in admitting McMichael's testimony, it was harmless. The testimony was admitted for the purpose of identifying the defendant as the victim's assailant. Other evidence in the case, including the defendant's confession which is not challenged in any regard, overwhelmingly establishes the identity of the defendant as the victim's assailant.

### Sentence Review

5. The jury found that the offense of murder was committed while the defendant was engaged in the commission of the offense of aggravated battery. OCGA § 17-10-30 (b) (2). The jury also found that the offense of murder was outrageously and wantonly vile, horrible and inhuman in that it involved torture and an aggravated battery to the victim, and depravity of mind of the defendant. OCGA § 17-10-30 (b)(7). We find that the evidence supports the jury's findings in regard to the aggravating circumstances beyond a reasonable doubt. See *Hicks v. State*, 256 Ga. 715 (25) (352 SE2d 762) (1987).

6. We do not find that the sentence of death was imposed in this case under the impermissible influence of passion, prejudice or other arbitrary factor. OCGA § 17-10-35 (c) (1).

7. The sentence of death is not excessive or disproportionate punishment to sentences imposed in similar cases generally. OCGA § 17-10-35 (c). The similar cases listed in the Appendix support the imposition of the death penalty in this case.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 14, 1988.

John W. Davis, for appellant.

Glenn Thomas, Jr., District Attorney, Robert L. Crowe, Assistant District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Assistant Attorney General, for appellee.

APPENDIX.

Hicks v. State, 256 Ga. 715 (352 SE2d 762) (1987); Hance v. State, 254 Ga. 575 (332 SE2d 287) (1985) (see factual statement in Hance v. State, 245 Ga. 856 (268 SE2d 339) (1980)); Conner v. State, 251 Ga. 113 (303 SE2d 266) (1983); Smith v. State, 249 Ga. 228 (7) (290 SE2d 43) (1982); Krier v. State, 249 Ga. 80 (287 SE2d 531) (1982); Cunningham v. State, 248 Ga. 558 (9) (284 SE2d 390) (1981); Cape v. State, 246 Ga. 520 (272 SE2d 487) (1980); Dix v. State, 238 Ga. 209 (232 SE2d 47) (1977).