S90P1631. WADE v. THE STATE.
(401 SE2d 701)

SMITH, Presiding Justice.

This is the second appearance of this death penalty case. The facts are recounted in our previous opinion. *Wade v. State,* 258 Ga. 324 (368 SE2d 482) (1988). There we held that the evidence was "sufficient to establish beyond a reasonable doubt the defendant's guilt of the offense of malice murder." Id. at 325. Wade's conviction was affirmed, but his sentence was reversed because of an error in the court's sentencing-phase charge, and the case remanded for resentencing. The sentencing phase has now been retried before a new jury, and Wade has been resentenced to death. This is his appeal.[1]

1. As in the first trial, the state contended that this offense of murder was committed while the offender was engaged in the commission of aggravated battery. OCGA § 17-10-30 (b) (2). The jury agreed, and found this statutory aggravating circumstance, as did the jury at the first sentencing trial.

Wade contends the evidence is insufficient to "raise[] this case into that class of cases involving . . . aggravated battery that can justify a death sentence." We disagree, and adhere to our previous opinion that the evidence was sufficient to prove Wade committed an aggravated battery which preceded the killing and was a separate and distinct act from the act causing death. *Wade v. State,* supra at 330. The evidence was sufficient to support the jury's § b (2) finding. OCGA § 17-10-30 (b) (2); *Davis v. State,* 255 Ga. 588, 593 (3 c) (340

---

[4] In this instance $10 equals .0002 of the total payments.

[1] The state's motion to reconsider the sentence reversal was denied on June 22, 1988. The sentencing phase was retried from April 3 through April 6, 1989. Sentence was imposed on the latter date. On April 17, 1989, the defendant filed his motion for new trial. After several amendments were filed, the motion was heard on January 25, 1990, and denied by written order dated May 22, 1990. The case was docketed in this court on October 4, 1990, and after the parties were granted extensions of time to file their briefs, the case was orally argued on January 15, 1991.

SE2d 862) (1986).[2] Moreover, we do not agree with Wade's contention that his crime was not sufficiently aggravated to justify a death sentence. We find that his death sentence is neither excessive nor disproportionate to sentences imposed in similar cases, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3). The similar cases listed in the Appendix support the imposition of a death sentence in this case.

2. The court's instructions on mitigating circumstances were not deficient. *Romine v. State*, 251 Ga. 208 (10 b) (305 SE2d 93) (1983); *Davis v. State*, supra at (22).

3. The trial court charged the jury on reasonable doubt:

> The law provides that when a person is convicted of a crime which may be punishable by death a sentence of death shall not be imposed unless the jury unanimously finds beyond a reasonable doubt that at least one statutory aggravating circumstance was present. . . .

> A reasonable doubt means what it says. It is a doubt of a fair-minded, impartial juror honestly seeking the truth. It is not an arbitrary nor a capricious doubt, but it is a doubt arising from a conflict in the evidence. If, after giving consideration to all the facts and circumstances of this case, your minds are wavering, unsettled and unsatisfied, then that is the doubt of the law, and you would not be authorized to impose a death sentence. . . .

Wade contends the court erred by failing to tell the jury that a reasonable doubt can arise not only from "a conflict in the evidence" but also from "a lack of evidence." He contends the court's failure to include the phrase "or a lack of evidence" removed from the prosecution the burden of proving its alleged statutory aggravating circumstance beyond a reasonable doubt. We do not agree. The court's instructions were sufficient; no reasonable juror could have been misled into believing that a reasonable doubt could not have arisen from a lack of evidence. There was no reversible error.

4. Concerning the statutory aggravating circumstance alleged by the state, the court instructed the jury that "a person commits aggravated battery when he maliciously, that is to say, intentionally and without justification or serious provocation, causes bodily harm to another by . . . [etc.]." The court also gave the usual instructions that "a

---

[2] At the retrial, as at the original trial, the state proved that the victim was struck twice in the head with a heavy stick and that one of the blows lacerated his scalp, tore the brain tissue, and fractured his skull.

person will not be presumed to act with criminal intent," but that intent could be inferred from the "words, conduct, demeanor, motive and other circumstances" shown by the evidence.

The defendant contends the court erred by not giving his request to charge number 6. This request to charge was, in toto: "Defendant respectfully requests the court to fully charge on the element of malice as applied to aggravated battery." On its face, this request seems to have been complied with. However, the defendant did elaborate somewhat during the charge conference, suggesting that the court should adapt an instruction on malice from OCGA § 16-5-1 (b), defining expressed and implied malice as it relates to the offense of murder. But the defendant did not explain, and has not yet, just how such an adaptation would read.

We find no error. The unmodified language of OCGA § 16-5-1 (b) is clearly not an appropriate instruction to give in relation to the aggravated battery statutory aggravating circumstance, and we decline to speculate about the utility of possible adaptations thereof not presented to the trial court or to this court.

The defendant contends, alternatively, that the court should at least have charged on "specific intent," based on his request to charge number 4. That is, instead of telling the jury that aggravated battery is committed when the defendant "maliciously, that is to say, intentionally and without justification or serious provocation" causes the specified bodily harm, the court should have charged that it is committed when the defendant "maliciously and with *specific* intent" causes the bodily harm. This is not a correct statement of law. See *Pope v. State*, 256 Ga. 195, 212-213 (23) (345 SE2d 831) (1986). The court did not err by refusing to give the defendant's request to charge number 4.

5. The court instructed the jury:

Another jury at another time found him guilty. As I told you earlier, you will not be considering the issue of guilt or innocence. You will be considering only what sentence to impose . . . [taking into consideration] all the evidence received here in Court presented by both the state and the defendant. . . .

These instructions were not erroneous, and did not, as the defendant contends, deprive him of his major argument against the death penalty. *Potts v. State*, 259 Ga. 96 (13) (376 SE2d 851) (1989).

6. The jury's original sentencing verdict included the finding: "Aggravated battery was committed prior to the death of [the victim.]" Upon objection by the defendant to the form of the verdict, the court returned the jury to the jury room for further deliberation. The jury then returned the following finding of a statutory aggravated cir-

cumstance: "Aggravated battery committed prior to the death of [the victim] and in relation to and in connection with the death of said victim."

Wade contends the first "verdict" was legally insufficient to support a death sentence, and should have been accepted in this form and a life sentence imposed. We disagree. The trial court did not err by returning the jury to the jury room for further deliberations, and did not, as the defendant contends, express an opinion violating OCGA § 17-8-57. *Wade v. State*, supra, 258 Ga. at 332 (12), and cits. The subsequent verdict, which was accepted by the court, while not in the exact language of OCGA § 17-10-30 (b) (2), suffices as a finding of the § b (2) circumstance. *Romine v. State*, 251 Ga., supra at (7).

7. The court did not err by excluding unreliable hearsay testimony by a witness who overheard someone say that the defendant was still in her store when the victim rode away on his bicycle, where the witness could not identify the out-of-court declarant, and had heard numerous different stories about the crime from a variety of customers at her store. *Alderman v. State*, 254 Ga. 206 (7) (327 SE2d 168) (1985).

8. The court did not err by denying Wade's motion in limine to prevent the state from presenting evidence not directly relating to proof of (a) statutory aggravating circumstances or (b) the defendant's character. *Ford v. State*, 257 Ga. 461 (1) (360 SE2d 258) (1987); *Blankenship v. State*, 251 Ga. 621 (308 SE2d 369) (1983).

9. We do not find an abuse of discretion in the court's control of the voir dire examination, *Curry v. State*, 255 Ga. 215, 218 (2 b) (336 SE2d 762) (1985). The court's excusals of jurors conscientiously opposed to the death penalty were within the deference due the trial court's determination under *Wainwright v. Witt*, 469 U. S. 412 (105 SC 844, 83 LE2d 841) (1985). *Jefferson v. State*, 256 Ga. 821 (2) (353 SE2d 468) (1987).

10. In his enumerations of error 21 through 24, Wade raises issues he concedes were raised in his previous appeal and decided contrary to his contentions. These enumerations are without merit for reasons stated in our previous opinion.

11. In his 26th enumeration, Wade contends the denial of his motion for new trial was error "for all the above and foregoing reasons." Nothing is raised here that is not raised elsewhere in his brief, and this enumeration is without merit.

12. Enumerations 27 and 28 are not argued, and absent plain error, which we do not find, are waived. Georgia Unified Appeal Procedure, § (IV) (B) (2).

13. Wade contends it was error to allow the sentencing jury to see his indictment showing the prior jury's verdict of guilty of malice murder *and* felony murder. See *Wade v. State*, supra, 258 Ga. at 325-

326 (2). Wade contends the sentencing jury may have been misled into believing he had a prior record or had been convicted of two murders.

Wade did not object to the delivery of the unaltered indictment and verdict to the sentencing jury. Had he done so, the trial court may well have excised all references to the felony murder count. Nevertheless, we do not agree that there was a significant possibility the jury was misled or confused about how many murders the defendant had committed. The court instructed the jury that Wade had been convicted of "murder," and the indictment shows on its face that each count alleged the same victim and the same date. Moreover, no evidence was presented about any other murder than the one for which the defendant was convicted. There was no harmful error.

14. The trial court did not err by denying Wade's motion for change of venue or, in the alternative, for a continuance. *Isaacs v. State*, 259 Ga. 717, 725-726 (15) (386 SE2d 316) (1989).

15. We do not find that Wade's death sentence was imposed as the result of passion, prejudice, or other arbitrary factor. OCGA § 17-10-35 (c) (1).

16. For the foregoing reasons, Wade's death sentence is affirmed.

*Judgment affirmed. All the Justices concur, except Clarke, C. J., Weltner, and Benham, JJ., who dissent.*

### Appendix.

*Newland v. State*, 258 Ga. 172 (366 SE2d 689) (1988); *Hicks v. State*, 256 Ga. 715 (352 SE2d 762) (1987); *Hance v. State*, 254 Ga. 575 (332 SE2d 287) (1985) (see factual statement in *Hance v. State*, 245 Ga. 856 (268 SE2d 339) (1980)); *Conner v. State*, 251 Ga. 113 (303 SE2d 266) (1983); *Smith v. State*, 249 Ga. 228 (7) (290 SE2d 43) (1982); *Krier v. State*, 249 Ga. 80 (287 SE2d 531) (1982); *Cunningham v. State*, 248 Ga. 558 (9) (284 SE2d 390) (1981): *Cape v. State*, 246 Ga. 520 (272 SE2d 487) (1980); *Dix v. State*, 238 Ga. 209 (232 SE2d 47) (1977).

HUNT, Justice, concurring.

I write separately to note, with reference to the dissent of Chief Justice Clarke, that Suggested Pattern Jury Instructions, Vol. 2, Criminal Cases, does not provide separate preliminary instructions for a jury which is hearing *only* the sentencing phase. The Council of Superior Court Judges may be well advised to draft charges for this purpose, taking into account the concerns raised by that dissent. Nonetheless, whether or not such charges are available to the court from that source, the defendant is not excused from requesting those charges he believes necessary to elaborate upon the issue of "residual"

doubt.[3] This defendant made no such request nor objected .to the charge as given.[4] Surely, the preliminary statement of a trial court that *this* jury cannot consider the *issue* of guilt or innocence because *this* jury is empaneled only to decide punishment, cannot be error, much less reversible error.

I am authorized to state that Presiding Justice Smith joins in this concurrence.

CLARKE, Chief Justice, dissenting.

I respectfully dissent to Division 5 and the judgment.

In the previous appearance of this case before this court, we affirmed the conviction and held that the evidence met the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). I agree with that holding and believe that the evidence in this case, viewed in a light most favorable to the verdict, authorized a trier of fact to find the defendant guilty beyond a reasonable doubt. My problem, however, rests not on the question of lack of reasonable doubt but rather on the question of the presence of residual doubt.

A residual doubt is less than a reasonable doubt and is not enough to reverse a conviction. Nevertheless, I believe a jury must be allowed to consider residual doubt in its deliberation on a question of whether a defendant shall be put to death.

We have noted before:

> "The fact that jurors have determined guilt beyond a reasonable doubt does not necessarily mean that no juror entertained *any* doubt whatsoever. There may be no *reasonable* doubt — doubt based upon reason — and yet some *genuine*

---

[3] The term "residual doubt" is confusing. While any juror can have doubt about a defendant's guilt, only a juror who sat upon the guilt-innocence phase of the trial and who did not entertain a *reasonable* doubt, can entertain a *residual* doubt, a doubt *leftover* from the finding of guilt. The dissent's concern, I believe, is that we do not eviscerate, or in any way diminish, the right of a juror empaneled to fix punishment at a resentencing trial to entertain the same reservation about the defendant's culpability as if he or she had been previously empaneled to consider the issue of guilt or innocence.

When a case is retried as to sentence, both the state and the defendant are entitled to offer evidence on the issue of guilt or innocence, *not because the validity of the conviction is at issue,* but because the jury needs to examine the circumstances of the offense . . . in order to decide intelligently the question of punishment. (Emphasis supplied.)

*Alderman v. State,* 254 Ga. 206, 210 (8) (327 SE2d 168) (1985).

Nothing in the court's charge, taken as a whole, prevented, or even discouraged, the jury's examination of those circumstances.

[4] The defendant's general reservation of objections to the charge, at the conclusion of the charge, purports to preserve this issue for review. But see Unified Appeal, Outline of Proceedings, Par. 9-12, § (B) (3) (a) which prohibits the reservation of objections to the sentencing-phase charge. One might further question whether a reservation of objections applies, in any event, to *preliminary* instructions.

doubt exists. It may reflect a mere possibility; it may be but the whimsy of one juror or several. Yet this whimsical doubt — this absence of absolute certainty — can be real.

"The capital defendant whose guilt seems abundantly demonstrated may be neither obstructing justice nor engaged in an exercise in futility when his counsel mounts a vigorous defense on the merits. It may be proffered in the slight hope of unanticipated success; it might seek to persuade one or more to prevent unanimity for conviction; it is more likely to produce only whimsical doubt. Even the latter serves the defendant, for the juror entertaining doubt which does not rise to reasonable doubt can be expected to resist those who would impose the irremedial penalty of death." *Cook v. State*, 255 Ga. 565, 586 (340 SE2d 843) (1986).

See *Smith v. Balkcom*, 660 F2d 573, 580-581 (Unit B, former 5th Cir. 1981).

Because the jury may consider the strength or weakness of the evidence in determining the sentence in a death penalty case, I would hold that the charge that "you will not be considering the issue of guilt or innocence" rises to the level of harmful error in such cases.

I am authorized to state that Justice Weltner joins in this dissent.

BENHAM, Justice, dissenting.

A life has been taken. When such a loss has resulted from a criminal act, society is justifiably outraged, and when the death involves one of tender years, society's outrage is magnified. In affirming the conviction of a defendant charged with a death-producing act, this court reaffirms society's outrage. However, our obligation as a court goes beyond merely expressing outrage. Our duty also imposes upon us an obligation to assure that the substantive rules of law and of criminal procedure are observed. It is in pursuit of that duty that I must respectfully dissent to the majority opinion.

In the first appellate appearance of this case (*Wade v. State*, 258 Ga. 324 (368 SE2d 482) (1988)), appellant stood convicted of felony murder with the underlying felony being aggravated assault. We reversed as to the sentence because of an improper charge to the jury. On the second trial, appellant was again sentenced to death, with the aggravating circumstance this time being aggravated battery under OCGA § 17-10-30 (b) (2), which permits the death penalty to be imposed when "[t]he offense of murder . . . was committed while the offender was engaged in the commission of . . . aggravated battery."

OCGA § 16-5-24 (a) provides as follows:

A person commits the offense of aggravated battery when he maliciously causes bodily harm to another by depriving him of a member of his body, by rendering a member of his body useless, or by seriously disfiguring his body or a member thereof.

The main opinion decides the evidence is sufficient to show the commission of aggravated battery; therefore, the death sentence was authorized. A careful review of the record shows the jury was authorized to find that the victim had been struck several times in the head with some type of instrument which caused a laceration 2 ½ inches in length and ⅛ to ¼ inch in width. This laceration was not clearly visible because it was covered by the victim's hair, and it was only discovered when the victim was being prepared for autopsy. There was also evidence of a blow to the face which produced swelling and discoloration around the eyes. All of these injuries preceded the strangulation of the victim.

The statute covering aggravated battery makes it abundantly clear that in order for the offense to be committed, there must have been (1) deprivation of a member, or (2) the rendering of a member useless, or (3) disfigurement. Neither the laceration nor the discoloration and swelling around the victim's eyes rose to the level of harm to which the aggravated battery statute referred.

Admittedly, criminal conduct, no matter what form it takes, is odious to society and all law-abiding citizens are offended by its presence. Nevertheless, the death penalty is a punishment that historically has been reserved for the most egregious of criminal offenses. It is so ordained because nothing is more precious than life, and out of an abundance of caution the state authorizes the taking of life by execution only for the commission of specifically heinous offenses, and then only after all the time-honored rules of law and statutory construction have been applied.

The first rule of law to be applied here is that criminal laws must be strictly construed in favor of the accused. *Holland v. State*, 34 Ga. 455 (1866). Another pertinent rule is set out in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), which requires appellate courts to determine whether the evidence is sufficient to allow the factfinder to determine the defendant's guilt beyond a reasonable doubt. Before we can place our imprimatur on the death penalty in this case, we must determine whether the evidence was sufficient to find the defendant guilty beyond a reasonable doubt of committing the separate offense of aggravated battery before the death occurred. *Burger v. State*, 245 Ga. 458 (4) (265 SE2d 796) (1980), cert. denied, 446 U. S. 988 (100 SC 2975, 64 LE2d 847) (1980).

The main opinion finds the evidence in this case sufficient to es-

tablish the aggravating circumstance that the murder was committed while appellant was committing aggravated battery. However, a review of aggravated battery cases renders a different portrait. In cases where we have affirmed a conviction for aggravated battery, the evidence has shown deprivation of a member,[5] loss of use of a member,[6] and serious disfigurement.[7]

Our present aggravated battery statute had its origin in the common law crime of mayhem.

> The 1968 Criminal Code, of which Code § 26-1305 [OCGA § 16-5-24 (a)] is a part, created the crime of aggravated battery in lieu of the older crimes of mayhem. . . . [*Mitchell v. State*, 238 Ga. 167 (231 SE2d 773) (1977).]

> Where the inhibition is directed against an injury which disfigures, it is not necessary that the whole member should be mutilated or detached if the injury impairs comeliness. However, the cutting or biting off of a small portion of the member which does not disfigure the person, and could only be discovered by close inspection, or examination, when attention is directed to it, will not constitute mayhem under some statutes; nor, it has been held, does the biting off of a portion of a member necessarily show that the injured person was deprived of the use of such member. Under some statutes a mere disfigurement of the organ referred to is not sufficient unless such disfigurement results in rendering the organ useless. The injury is ordinarily sufficient to bring the case within the statute where it is such to deprive the injured person of the organ for the ordinary and usual practical pur-

---

[5] Deprivation of a member:
*Mitchell v. State*, 238 Ga. 167, supra, loss of an eye; *McCulligh v. State*, 169 Ga. App. 717 (314 SE2d 724) (1984), loss of an eye; *Drayton v. State*, 167 Ga. App. 477 (306 SE2d 731) (1983), loss of an ear; *Jarrard v. State*, 152 Ga. App. 553 (263 SE2d 444) (1979), loss of spleen; *Howard v. State*, 173 Ga. App. 585 (327 SE2d 554) (1985), loss of leg; *Harris v. State*, 188 Ga. App. 795 (374 SE2d 565) (1988), loss of sight.

[6] Loss of use of a member: *Ingram v. State*, 170 Ga. App. 200 (316 SE2d 825) (1984), victim remained in coma with loss of use of right arm and leg and poor eyesight and memory; *Griffin v. State*, 170 Ga. App. 287 (316 SE2d 797) (1984), victim remained in coma with 75 percent of brain destroyed; *Jackson v. State*, 142 Ga. App. 565 (236 SE2d 549) (1977), victim rendered paraplegic by gunshot wound to spine; *Baker v. State*, 245 Ga. 657 (266 SE2d 477) (1980), fractured jawbone, which had to be wired to immobilize it, with serious temporary disfigurement and loss of use of jaw until it healed.

[7] Serious disfigurement: *Veasley v. State*, 142 Ga. App. 863 (237 SE2d 464) (1977), gunshot wound to face; *Ewing v. State*, 169 Ga. App. 680 (314 SE2d 695) (1984), potash thrown in face and eyes requiring skin graft; *Price v. State*, 160 Ga. App. 245 (286 SE2d 744) (1981), boiling water thrown on victim causing severe injuries requiring several weeks of hospitalization, plastic surgery and permanent scarring.

poses of life. [57 CJS 461, Mayhem, § 3 (c) (3).]

Aggravated battery statutes, having had their origin in the common law crime of mayhem, should be construed in light of the common law. 53 AmJur2d 487, Mayhem, § 1.

> Under the early common law, if an injury merely disfigured a person without diminishing his corporal abilities, it did not constitute the crime of mayhem. Moreover, whatever the injury to any member of the body might be, if it did not permanently affect the physical ability of the person to defend himself or annoy his adversary, it did not amount to mayhem. . . . The military or combative importance of the organ or member injured or destroyed, to which the old common law had special regard, is, however, of no significance whatever as a constituent of mayhem under most statutes. Whether capacity for attack or defense has been lessened by the maiming is utterly irrelevant and immaterial. *The statute looks not to the fighting, to giving or shunning blows, but to maintaining the integrity of the person, the natural completeness and comeliness of the human members and organs, and to preserving their functions.* [Emphasis supplied.] [Id. § 3.]

The factual issue of "serious disfigurement" is a matter for jury determination (*Miller v. State*, 155 Ga. App. 54 (270 SE2d 466) (1980)); however, there must be sufficient evidence upon which a jury can make its determination. In determining the sufficiency of the evidence, we should require no more than is provided for under the statute. On the other hand, we should require no less than the statute dictates. And in doing so, we should be careful not to allow the statute relating to aggravating circumstances to be interpreted too loosely.

The injuries to the victim in this case on which the State relies to show aggravated battery consisted of a laceration which was hidden by the victim's hair and was not visible without moving the hair, head injuries and facial bruising, and ligature marks on the victim's neck. Conspicuously absent from the evidence is any testimony that the injuries would have deprived the victim of any member of his body or the use of any member of his body, or that the victim would have been seriously disfigured by the injuries. Taking into consideration the common law origin of the offense of aggravated battery and the cases decided under our aggravated battery statute, and considering the evidence in the light most favorable to the verdict, I find the evidence to be insufficient to prove aggravated battery as an aggravating

circumstance authorizing the imposition of the death penalty. Therefore, I would vacate the death sentence and remand this case to the trial court for imposition of a life sentence.

DECIDED MARCH 15, 1991 —
RECONSIDERATION DENIED MARCH 27, 1991.

*Strauss & Walker, John T. Strauss,* for appellant.
*John W. Ott, District Attorney, J. Ellis Millsaps, Assistant District Attorney, Michael J. Bowers, Attorney General, Andrew S. Ree,* for appellee.