## 45011. WILLIAMS v. THE STATE.

(363 SE2d 535)

WELTNER, Justice.

Elester Williams shot and killed Richmond Johnson with a handgun. He was convicted of malice murder and sentenced to life imprisonment.[1]

Williams and his wife were married in 1969, but lived together for less than a year before they separated. They were not divorced, and over the years maintained a friendly relationship. On the evening of the killing, Williams went to his wife's residence to retrieve some of his personal property. Johnson and Williams' wife were in a vehicle parked near the wife's home. A confrontation took place. Williams testified that Johnson cursed him; that he saw a pistol in Johnson's hand; and that he thought Johnson was going to shoot him. Williams then shot Johnson one time with his handgun, and fled. The abandoned weapon was found and turned over to police. Williams left the area for several days, eventually surrendering himself when he learned that Johnson was dead.

Mrs. Williams testified that while she was with Johnson, Williams ran up to them, cursed Johnson, and then shot him. She testified that Johnson had no weapon. The investigating officers found none.

Johnson's widow testified that her husband owned a weapon, and that she found it after his death in its accustomed place.

1. The evidence is such that a rational trier of fact could have found Williams guilty beyond a reasonable doubt of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In the course of cross-examination, Williams testified: "No, sir, I've never killed nobody. I've never hurt nobody." The district attorney then asked if Williams had not been charged with aggravated assault in 1979, and Williams stated that he had not. The district attorney asked, "You were not?" Again receiving a negative response from Williams, he asked, "You were not charged with aggravated assault by the grand jury?" At this point there was both an objection to the question and a motion for a mistrial.

The trial court denied the motion for mistrial, and then gave the following instructions: "The court will instruct the jury, though, to disregard any question to the witness, Defendant, concerning any prior charges, if any, that he may have had against him and any re-

---

[1] The crime was committed on June 25, 1986, and Williams was indicted on September 8, 1986. He was found guilty and was sentenced on December 17, 1986. His motion for new trial was filed on January 6, 1987, and was denied on April 16, 1987. His notice of appeal was filed on May 11, 1987, and the trial transcript was certified on July 13, 1987. His appeal was docketed here on August 28, 1987, and was submitted on October 9, 1987.

sponse the witness made concerning that question." Williams assigns error on the trial court's refusal to grant his motion for mistrial.

3. The following authorities control this question:

(a) OCGA § 24-2-2 provides: "The general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." This code section applies both to criminal and civil cases. *Hartley v. State*, 159 Ga. App. 157, 161 (282 SE2d 684) (1981).

(b) OCGA § 24-9-20 provides in part: "If a defendant in a criminal case wishes to testify and announces in open court his intention to do so, he may so testify in his own behalf. If a defendant testifies, he shall be sworn as any other witness and may be examined and cross-examined as any other witness, except that no evidence of general bad character or prior convictions shall be admissible unless and until the defendant shall have first put his character in issue."[2]

(c) "Good character is a substantive fact, like any other fact tending to establish the defendant's innocence, and ought to be so regarded by court and jury. . . . [Cit.] Evidence of good character is not admitted as a mere makeweight, but as evidence of a positive fact, and may of itself, by the creation of a reasonable doubt, produce an acquittal. [Cit.]" *Seymour v. State*, 102 Ga. 803, 805 (90 SE2d 263) (1897).

4. In the light of precedents, it is apparent that some clarification is needed — principally by distinguishing the types of evidence admissible for the purpose of impeaching testimony.

(a) We held in *Brown v. State*, 237 Ga. 467, 468 (228 SE2d 853) (1976), as follows: " 'The general character of the defendant and his conduct in other transactions is irrelevant unless the defendant chooses to put his character in issue.' [Cit.] In this case the [defendant] on direct examination put his character in issue. He denied his involvement in the crime for which he was being tried and went further by adding that he had 'never robbed anybody' nor 'stolen anything from home or my mother.' These additional averments by the appellant placed his character in issue and justified cross-examination on this point. Once a defendant 'opens the door' for character evidence, specific events may be used in testing the extent and foundation of the defendant's knowledge and the correctness of his testimony on direct examination. [Cit.]"

(b) In *Brown*, supra, the defendant made a statement of fact, i.e., that he had never robbed anybody and he had never stolen anything

---

[2] See also *Frazier v. State*, 257 Ga. 690, 698 (362 SE2d 351) (1987); *Jones v. State*, 257 Ga. 753, 754 (363 SE2d 529) (1988).

from home or his mother. Upon the making of that assertion, he became subject to impeachment as to its veracity. "If a defendant testifies, he may be cross-examined by the prosecution like any other witness." *Hooks v. State*, 253 Ga. 141, 143 (317 SE2d 531) (1984).

(c) That impeachment may proceed in the following manner:

(1) If the defendant in fact had robbed someone or stolen from home or mother, then evidence establishing such a fact would be admissible for the purpose of impeaching his credibility; and

(2) If he had been convicted of such a crime, then a certified copy of such conviction would be admissible, *not* primarily for the purpose of demonstrating bad character, but specifically to establish the falsity of the assertion. This latter showing would be relevant, as impeachment evidence, because it would bear directly upon the credibility of his denials.

(d) Neither of these means of impeachment is "character" evidence as prohibited by OCGA § 24-9-20, nor as contemplated by *Seymour*, supra. Thus, the *evidence* offered by the state in *Brown* was permissible — notwithstanding that the statement of the defendant (denying prior robbery or theft) did not "first put his character in issue," as prohibited by OCGA § 24-9-20.

5. Four types of impeachment evidence are set out in Suggested Pattern Jury Instructions, Vol. 2, Criminal Cases, published by The Council of Superior Court Judges, pp. 37-39, as follows:

"To impeach a witness is to prove such witness is unworthy of belief. I instruct you that a witness may be impeached by: a. disproving the facts to which the witness testified; b. by proof of general bad character; c. by proof that the witness has been convicted of a crime involving moral turpitude; d. by proof of contradictory statements, previously made by the witness, as to matters relevant to his or her testimony as to the case."

Thus, while the impeachment of a defendant's general credibility by proof of general bad character and of prior convictions (sub-heads (b) and (c), supra) is prohibited by OCGA § 24-9-20, impeachment of the specific testimony of a criminal defendant (e.g., "I never hurt nobody") may be accomplished by testimony that he did, in fact, hurt another, or by a certified copy of a conviction for a crime of physical violence. Either manner would be permissible under sub-head (a), supra, for purposes of impeaching the veracity of a defendant, notwithstanding a resultant (and adverse) reflection upon a defendant's character.[3]

---

[3] While the issue in this case is one of impeachment, there are two other types of evidence that are admissible (in addition to impeachment by contradictory evidence), even though each type may reflect adversely upon the character of a criminal defendant. These are:

6. In this case, the district attorney's reference to an indictment was an inappropriate means of impeaching, by contradictory evidence, Williams' statement that he had never hurt anyone. " '[A] mere indictment or a charge or an arrest or a trial and acquittal, are not legal methods of impeachment. [Cit.]' " *McGuire v. State*, 238 Ga. 247, 249 (232 SE2d 243) (1977).

Even so, the trial court's instructions were sufficiently curative, and it was not error to refuse to grant the motion for mistrial. *Chancey v. State*, 256 Ga. 415, 435 (349 SE2d 717) (1986).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 15, 1988 —
RECONSIDERATION DENIED FEBRUARY 4, 1988.

*Lawson & Fuller, John W. Lawson,* for appellant.

*E. Byron Smith, District Attorney, Michael J. Bowers, Attorney General, Mary Beth Westmoreland, Assistant Attorney General,* for appellee.

---

(a) *Similar crimes.* " 'Once the identity of the accused as the perpetrator of the offense separate and distinct from the one for which he is on trial has been proven, testimony concerning the independent crime may be admitted for the purpose of showing identity, motive, plan, scheme, bent of mind and course of conduct.' [Cit.]" *Davis v. State*, 249 Ga. 309, 311 (290 SE2d 273) (1982).

(b) *Circumstance of the crime.* The factual elements of the crime for which a defendant is tried may raise evidence of other crimes for which he is *not* being tried, but such evidence is not excludable solely on that ground. *Felker v. State*, 252 Ga. 351, 365 (314 SE2d 621) (1984).