S99P1003. DRANE v. THE STATE.
(523 SE2d 301)

HINES, Justice.

A jury convicted Leonard M. Drane of malice murder, felony murder, and aggravated battery, and imposed a death sentence for the malice murder. The evidence adduced at trial showed that Drane and co-indictee David Willis picked up Renee Blackmon on June 13, 1990, and drove her to a secluded road. Ms. Blackmon's body was found in a lake on July 1, 1990. She had been shot point-blank in the head with a shotgun and her throat had been cut at least six times. She was tied to a brake drum with a rope. After his arrest, Drane claimed that Willis had sex with the victim and shot her with a shotgun, and then cut her throat because she was still breathing. Drane said he did not know Willis was going to kill the victim and he did not participate in her killing. However, he admitted helping Willis dispose of the body, hide the gun, wash Willis's truck, and burn their clothes; and that he continued to live with Willis for three weeks until their arrest. He claimed he did so because he was afraid of Willis.

At trial, a witness testified that Drane told her prior to his arrest that he and Willis "picked this [black] girl up at the Huddle House in

Elberton, Georgia, and that it would be the last ride she'd ever take."[1] He further said he "[had sex with] her so bad that she'd never have any more babies" and that he and Willis threw her in the lake. He said the only mistake he made was to put one block on her instead of two (the body had just been discovered). Another witness testified that Drane told him he cut the victim's throat because she was still alive after Willis shot her. On the night of the murder, after Willis and Drane had disposed of the victim's body, they went to a bar and met some women. They went with the women to a trailer, where they drank beer and made comments about hating blacks. One of the women noticed that the men, who were not wearing shirts, had scratches on their chests. In the penalty phase, one of the women testified that Drane forced her to orally sodomize him at knife point that same night.

In *Drane v. State*, 265 Ga. 255 (455 SE2d 27) (1995), we held that the evidence was sufficient to support Drane's convictions and the finding of the existence of the statutory aggravating circumstances, id. at (1) and (7), but we remanded the case to the trial court to determine: (1) whether the prosecutor's peremptory strikes were gender-neutral and (2) whether there were exceptional facts and circumstances so that the exclusion of Willis's alleged confession to a cellmate deprived Drane of due process. Id. at 256. Because the results of the proceedings on remand call for further appellate review, we now address these issues and other remaining enumerations of error.

1. At Drane's 1992 trial, the state used nine out of nine peremptory strikes to remove female prospective jurors from the jury. The jury was selected from 39 prospective jurors, 22 of which were women.[2] Eight females were members of the jury which convicted Drane and sentenced him to death. Pursuant to *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), defendant made a motion based on the state's alleged gender bias in the use of its peremptory strikes. The state responded that *Batson* did not apply to gender. The trial court denied the motion. While Drane's appeal was pending, the United States Supreme Court decided *J.E.B. v. Alabama*, 511 U. S. 127 (114 SC 1419, 128 LE2d 89) (1994), which held that the equal protection clause of the United States Constitution prohibits discrimination in jury selection on the basis of gender. *Drane*, 265 Ga. at 256 (2). Accordingly, we remanded this issue to the trial court for a hearing regarding the state's explanation of its per-

---

[1] The victim was African-American and Willis and Drane are white. There was evidence of a racial motive for the murder.

[2] There was a full array of 42 prospective jurors, but the state did not use one of its peremptory strikes and Drane did not use two of his.

emptory strikes, and for a finding from the trial court as to whether the state's strikes were gender-neutral. Id.

"Once a party challenging the exercise of a peremptory strike makes a prima facie showing of gender-based discrimination, the party exercising the strike must give an explanation for the strike that is gender-neutral, reasonably specific, and related to the case." *Tedder v. State*, 265 Ga. 900 (2) (463 SE2d 697) (1995).[3] "It is then for the trial court to determine, after considering the totality of the circumstances, whether the opponent of the strike has shown that the proponent of the strike was motivated by discriminatory intent in the exercise of the peremptory challenge." *Turner v. State*, 267 Ga. 149 (2) (476 SE2d 252) (1996). "A trial court's findings on whether the opponent of the strike has met his burden of persuasion is entitled to great deference and will be affirmed unless clearly erroneous." *Barnes v. State*, 269 Ga. 345 (6) (496 SE2d 674) (1998); *Turner*, supra.

On remand, the trial court found that the state had not discriminated on the basis of gender in its peremptory challenges after hearing the prosecutor's reasons for his strikes. Five prospective jurors were struck because they expressed reservations about imposing a death sentence and two prospective jurors had relatives who had been convicted of crimes and incarcerated. These are valid gender-neutral reasons which are adequate to justify a peremptory strike. See *Barnes*, supra; *Davis v. State*, 263 Ga. 5 (10) (426 SE2d 844) (1993); *Tharpe v. State*, 262 Ga. 110 (6) (416 SE2d 78) (1992). Another prospective juror stated that she believed reasonable doubt meant no doubt and that vulgar language from witnesses would bother her. Since these reasons are also gender-neutral and no discriminatory intent is inherent in the state's explanation of the strike, we do not conclude that the trial court's acceptance of these reasons was clearly erroneous. See *Barnes*, supra. The state claims that the final prospective juror it struck was "not clear as to what reasonable doubt really was" and was "timid and quiet" during jury selection. The trial court did not err by accepting the state's first reason because the record provides support for it and there is no discriminatory intent inherent in the explanation. Id. Support for the state's second reason is not readily apparent in the record, but considering the totality of the circumstances, including the final composition of the jury and the existence of other valid gender-neutral reasons for this strike and other strikes by the state, we cannot conclude that the trial court's acceptance of this reason was clearly erroneous. Id. We

---

[3] The trial court made no finding as to prima facie discrimination, but this preliminary finding is moot once the proponent gives reasons for its strikes and the trial court makes its findings. *Hernandez v. New York*, 500 U. S. 352, 359 (111 SC 1859, 114 LE2d 395) (1991); *Barnes v. State*, 269 Ga. 345 (6) (496 SE2d 674) (1998).

find no error with the trial court's *J.E.B.* ruling.

2. During the guilt-innocence phase of the trial, Drane tried to introduce evidence that his co-indictee, Willis, confessed his role in the murder to cellmate Marcus Guthrie. The state objected on hearsay grounds. During a proffer outside the presence of the jury, Guthrie testified that Willis told him he shot Ms. Blackmon and cut her throat.[4] Willis was unavailable to testify because his murder trial was pending. The trial court ruled the testimony inadmissible in the guilt-innocence phase because it was hearsay and unreliable, but Guthrie was permitted to testify about the alleged confession in the penalty phase. On appeal, we remanded the case to the trial court because it was unclear from the record whether the trial court adequately considered the elements of reliability and necessity which would require admission of this evidence in the guilt-innocence phase under *Chambers v. Mississippi*, 410 U. S. 284 (93 SC 1038, 35 LE2d 297) (1973) (failure to admit evidence of another's confession, offered in the guilt-innocence phase of trial, may constitute a violation of due process under certain circumstances). *Drane*, 265 Ga. at 257 (3). See also *Turner*, 267 Ga. at 153-154 (3). On remand, the trial court ruled that Guthrie's testimony, while "necessary" to the defense, was properly excluded in the guilt-innocence phase because Willis's statement to Guthrie "does not show persuasive assurances of trustworthiness nor was the statement made under circumstances providing considerable assurance of its reliability." We agree with the trial court.

Evidence of a co-indictee's alleged confession is generally inadmissible hearsay. *Drane*, supra; *Guess v. State*, 262 Ga. 487 (2) (422 SE2d 178) (1992). However, another person's confession to a third party may be admitted in the guilt-innocence phase under exceptional circumstances that show a considerable guaranty of the hearsay declarant's trustworthiness. *Chambers*, supra at 300-302; *Drane*, supra. The trial court must determine whether the value and reliability of the tendered hearsay evidence outweigh the harm resulting from a violation of the evidentiary rule. See *Chambers*, supra at 302; *Turner*, 267 Ga. at 154-155 (3). In *Chambers*, the hearsay testimony was deemed trustworthy and admissible because the declarant (alleged to be the perpetrator by Chambers) made three spontaneous confessions to close friends shortly after the murder, the confessions were against the declarant's interest, each confession was corroborated by other evidence (including eyewitness testimony to the shooting, a sworn confession by the declarant that was admitted at trial, and evidence that the alleged perpetrator had been seen

---

[4] Guthrie also testified in the penalty phase that Willis said he would have killed Drane "if he wouldn't go through with what he wanted to do," but Guthrie admitted that Willis never said he made Drane do anything.

with the murder weapon), and the declarant was present in the courtroom and available for cross-examination. In a later case, the United States Supreme Court held that the same balancing test must be employed in the sentencing phase for this type of evidence and listed an additional consideration of whether the declarant's alleged confession had been used by the state against the declarant at his trial. *Green v. Georgia*, 442 U. S. 95 (99 SC 2150, 60 LE2d 738) (1979).

On remand, the trial court applied the *Chambers/Green* analysis to Guthrie's proposed guilt-innocence phase testimony and found the following: (1) Willis was not a close friend of Guthrie, but a mere cellmate. When asked if he was Willis's friend, Guthrie replied, "Well, we talked occasionally, you know." (2) Guthrie admitted that inmates frequently exaggerate their crimes to appear tougher to their fellow inmates, which indicates that Willis had a motive to fabricate his statement at the time it was made. (3) Willis told Guthrie that the victim was a "white girl" when she was African-American. (4) Although there were some consistencies between Guthrie's testimony and the facts of the crimes, there was no independent evidence corroborating Willis's alleged claim that he did all of the shooting and slashing. (5) The state used Willis's alleged confession to Guthrie as evidence to convict Willis in a trial a year after Drane's trial. (6) Since Willis had not been tried at the time of Drane's trial, he was unavailable to testify on the advice of counsel. The trial court ruled that the alleged confession was properly excluded due to its lack of reliability and, after review of the record, we conclude that this ruling was not error. See *Chambers*, supra; *Green*, supra at 97. In addition, we note that the jury apparently did not attach much credibility to Willis's alleged confession to Guthrie because it was admitted in the penalty phase and they nonetheless chose to sentence Drane to death.[5]

3. Drane also claims that Willis's alleged confession to Guthrie was admissible under the OCGA § 24-3-5 co-conspirator exception to the hearsay rule, but acknowledges in his brief that he did not raise this issue during the trial or on his initial direct appeal because "it was Appellant's contention that a conspiracy had not been proved at trial." Since this objection was not made at trial (in fact, the objection was deliberately avoided), it is waived on appeal. *Earnest v. State*,

---

[5] The record on remand contains a transcript of Guthrie's testimony at Willis's trial. Although not specifically referred to by the trial court in its order, we note that this testimony further shows that Guthrie was Willis's cellmate in jail for only a week and that Guthrie did not approach law enforcement with Willis's alleged confession to him until months later when Guthrie was incarcerated with fellow inmate Leonard Drane. Guthrie admitted that he had had "numerous conversations" with Drane and that in certain circumstances he would lie to help a friend.

262 Ga. 494 (1) (422 SE2d 188) (1992).

4. Before an audiotape of one of Drane's statements was played for the jury, Drane requested an in-chambers conference with the judge and prosecutor regarding a redaction made to the audiotape at Drane's request. Drane and his counsel attended, but the conference was not recorded by the court reporter. When the judge and other attendees returned to the courtroom, Drane's counsel placed an objection regarding the redaction on the record, and the trial court overruled it. After this case was remanded, Drane now claims that the trial transcript omits several other objections he made at the conference which were not ruled on by the trial court. See OCGA §§ 5-6-41 (a); 17-8-5 (a); Unified Appeal Procedure Rule IV (A) (4). However, Drane's counsel testified at a hearing that he remembered no additional objections being made at the conference and that he ensured every objection he made was preserved on the record. Since Drane's objection at the in-chambers conference was preserved for appeal and there is no evidence to support Drane's contention that other objections were not recorded, we find no error. See *Smith v. State*, 251 Ga. 229 (2) (304 SE2d 716) (1983). After review of the record, we also conclude that even if the alleged objections to the edited audiotape were made, they are without merit. The trial court redacted the portion of Drane's statement referring to a fight he had with African-American inmates while previously incarcerated. Other comments he made about African-Americans in his statement were relevant to show a possible motive for his actions. See *Mize v. State*, 269 Ga. 646 (3) (501 SE2d 219) (1998); *Boutwell v. State*, 256 Ga. 63 (2) (344 SE2d 222) (1986).

5. The trial court's curative instructions adequately prevented error from arising due to a spectator's emotional outburst during the state's guilt-innocence phase closing argument. See *Lowe v. State*, 267 Ga. 410 (3) (478 SE2d 762) (1996); *Byrd v. State*, 262 Ga. 426 (1) (420 SE2d 748) (1992).

6. While asking the jury whether they wished to hear the court's guilt-innocence phase charge before they recessed for the day, the trial court said:

> [I]t is now twenty-five minutes 'til five. I have the law to charge you which is quite lengthy that you'll be governed by in your deliberations. At that time, you will proceed to the jury room to reach a decision if you can based on what you've heard and the law charged and then we'd go into the second phase of this case. . . .

After the jury retired to make its scheduling decision, Drane objected that the trial court's comments implied that there would be a convic-

tion. The trial court issued curative instructions to the jury when they returned to the courtroom, telling them the court did not intend to imply any verdict and if the defendant was acquitted there would be no second phase of the trial. Drane did not object to these instructions, request further instructions, or move for a mistrial. Therefore, this issue has not been preserved for appellate review. *Pye v. State*, 269 Ga. 779 (9) (505 SE2d 4) (1998); *Weems v. State*, 268 Ga. 515 (2) (491 SE2d 325) (1997).

7. The death sentence in this case was not imposed under the influence of passion, prejudice or any other arbitrary factor. OCGA § 17-10-35 (c) (1). This Court has previously found that Drane's death sentence is not disproportionate to the life sentence Willis received for the same murder. *Drane*, 265 Ga. at 260 (14).[6] See also *Waldrip v. State*, 267 Ga. 739 (25) (482 SE2d 299) (1997) ("That different juries hearing different evidence might arrive at different punishment [for co-defendants] does not establish a claim of disproportionality."); *Carr v. State*, 267 Ga. 547 (11) (480 SE2d 583) (1997) (defendant's death sentence not disproportionate to co-defendant's life sentence despite claim that co-defendant was the "prime mover" in the murder); *Lee v. State*, 258 Ga. 82 (10) (365 SE2d 99) (1988) (defendant's death sentence not disproportionate to co-defendant's life sentence despite defendant's claim he was a "mere abettor" to the murder); *Beck v. State*, 255 Ga. 483 (6) (340 SE2d 9) (1986) (defendant's death sentence not disproportionate to co-defendant's life sentence when evidence inconclusive as to which defendant was the actual killer); *Allen v. State*, 253 Ga. 390 (8) (321 SE2d 710) (1984) (death sentence not disproportionate to co-defendant's life sentence); *McClesky v. State*, 245 Ga. 108, 115 (263 SE2d 146) (1980) ("There is not a simplistic rule that a co-defendant may not be sentenced to death when another co-defendant receives a lesser sentence."). Compare *Hall v. State*, 241 Ga. 252 (8) (244 SE2d 833) (1978). The state presented evidence that Drane cut the victim's throat while she was still breathing, helped dump her body and destroy evidence, and made disparaging remarks about the victim after her murder. There was also penalty phase evidence that Drane sexually assaulted another woman on the same night as the murder. See id. The death sentence is also not disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3). The similar cases listed in the Appendix support the imposition of the death penalty in this case, as they involve aggravated batteries under the (b) (2) and (b) (7) aggravating circumstances.

---

[6] The state sought a death sentence for Willis but the jury returned a sentence of life imprisonment.

*Judgment affirmed. All the Justices concur, except Sears, J., who concurs in part and dissents in part.*

SEARS, Justice, concurring in part and dissenting in part.

I concur in the majority's affirmance of appellant's adjudication of guilt. However, for the reasons explained in my partial concurrence and partial dissent in *Wilson v. State,*[7] I would stay ruling on the constitutionality of appellant's sentence of death by electrocution until receiving guidance from the United States Supreme Court on that issue.[8]

APPENDIX.

*Johnson v. State,* 271 Ga. 375 (519 SE2d 221) (1999); *Lee v. State,* 270 Ga. 798 (514 SE2d 1) (1999); *Perkins v. State,* 269 Ga. 791 (505 SE2d 16) (1998); *Mize v. State,* 269 Ga. 646 (501 SE2d 219) (1998); *Waldrip v. State,* 267 Ga. 739 (482 SE2d 299) (1997); *Carr v. State,* 267 Ga. 547 (480 SE2d 583) (1997); *Crowe v. State,* 265 Ga. 582 (458 SE2d 799) (1995); *Todd v. State,* 261 Ga. 766 (410 SE2d 725) (1991); *Taylor v. State,* 261 Ga. 287 (404 SE2d 255) (1991); *Wade v. State,* 261 Ga. 105 (401 SE2d 701) (1991); *Newland v. State,* 258 Ga. 172 (366 SE2d 689) (1988); *Jefferson v. State,* 256 Ga. 821 (353 SE2d 468) (1987); *Hicks v. State,* 256 Ga. 715 (352 SE2d 762) (1987); *Conner v. State,* 251 Ga. 113 (303 SE2d 266) (1983); *Krier v. State,* 249 Ga. 80 (287 SE2d 531) (1982).

DECIDED NOVEMBER 1, 1999 —
RECONSIDERATION DENIED DECEMBER 20, 1999.

*Billy I. Daughtry, Jr.,* for appellant.

*Daniel J. Craig, District Attorney, Thurbert E. Baker, Attorney General, Allison B. Goldberg, Assistant Attorney General,* for appellee.

---

[7] 271 Ga. 811, 824 (525 SE2d 339) (1999).

[8] In all capital cases, this Court is obligated to undertake a sua sponte review of the death sentence to determine, among other things, whether the penalty is excessive. OCGA § 17-10-35. "This penalty question is one of cruel and unusual punishment, and is for the court to decide" in all cases. *Blake v. State,* 239 Ga. 292, 297 (236 SE2d 637) (1977).