S05A0614. HARRIS v. THE STATE.
(615 SE2d 532)

BENHAM, Justice.

Appellant Selma Harris was convicted of malice murder, burglary, two counts of theft by taking, six counts of forgery in the first degree, and concealing a death of another in connection with the death of Sylvia Kathleen Wells in July 2000 in Chatham County.[1] She

---

[1] Appellant was charged in a true bill of indictment returned by the Chatham County grand jury on January 9, 2002, with malice murder, felony murder (aggravated assault), felony murder (aggravated battery), burglary, two counts of felony theft by taking, eight counts of forgery in the first degree (two of which were nol prossed), and concealing the death of another. Her trial commenced on November 5, 2002, and concluded on November 8 when the jury returned its guilty verdicts. The convictions for felony murder were vacated by operation of law and, on November 26, the trial court filed the sentences it had imposed: life imprisonment for the malice murder conviction, a consecutive ten-year sentence for concealing a death, a consecutive twenty-year sentence for burglary, and eight concurrent ten-year sentences for the forgery and theft convictions. Appellant timely filed a motion for new trial on December 6, 2002, which was amended on March 20 and December 5, 2003, and April 9, 2004. The trial court denied the amended motion on September 16, 2004, and appellant filed a timely notice of appeal on September 22. The case was docketed in this Court on December 15, and was orally argued on March 21, 2005.

appeals the judgment of conviction entered against her and we affirm, finding no reversible error among those appellant enumerates.

1. The victim was found in a locked freezer in her home in which she kept frozen meat and seafood on July 23, 2000. The GBI forensic pathologist who performed the autopsy estimated the body had been in the freezer for several days, and found the cause of death to be manual strangulation. In response to questions about the strength needed to strangle someone, the pathologist testified that any adult was capable of strangling another adult because a victim could be rendered unconscious by ten-fifteen seconds of eleven pounds of pressure on the victim's carotid artery. A pest control service technician testified she saw the victim, whom she described as distraught, when the technician did the annual inspection and treatment of the victim's home on July 17. A neighbor who testified she normally saw the victim on a daily basis, grew concerned when she had not seen the victim for over a week, had not seen her car, the victim's answering machine was full, and the witness saw people removing furniture and personal belongings from the victim's home in the middle of the night on July 22. A pawnshop owner testified appellant had pawned several items of jewelry on July 18 and 22, and appellant's son had pawned several pieces of jewelry worth over $500 on July 18 and 19. The victim's son identified the jewelry as belonging to his mother. Appellant's husband testified appellant and her son brought frozen food to their home during the week of July 15-22, and a long-time friend of appellant testified she purchased from appellant clothing, housewares, cookware, linens, and furniture at the victim's home on July 22, after being told by appellant that appellant was conducting a garage sale on behalf of the victim who appellant said had been placed in a rehabilitation center in Oklahoma by her parents.

The victim's father and son, residents of Oklahoma, her son-in-law, a resident of Texas, and her sister, a resident of Americus, Georgia, testified about their unsuccessful attempts to contact the victim from July 19-July 22. A woman named Selma answered the phone at the victim's home and reported the victim was not at home or did not wish to speak with the caller. Selma also reported to family members that the victim had been staying with a man in a local motel and had returned home in need of her family's assistance, but did not wish to answer the telephone.

A young man who provided lawn maintenance and pet care for the victim testified appellant wrote a check on the victim's checking account, signing the victim's name, to pay for his services on July 20. The victim's father testified that the check written to the young man and five other checks written on the victim's checking account and

made payable to appellant's son, to "cash," to a discount store, and to a pizza establishment were not written by the victim.

The evidence presented was sufficient to authorize a rational trier of fact to find appellant guilty of murder, burglary, theft by taking, forgery, and concealing a death. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). To the extent circumstantial evidence was presented, the jury's determination that the circumstantial evidence was sufficient to exclude every reasonable hypothesis save that of the guilt of appellant is supported by the evidence and therefore may not be disturbed. *Eckman v. State*, 274 Ga. 63 (1) (548 SE2d 310) (2001).

2. Appellant contends the trial court erred when it granted the State's motion in limine prohibiting appellant, her counsel, or any defense witness from mentioning that appellant's son, Jerrell Lee Howard, had told police he had killed the victim, until Howard testified. Evidence that another person confessed to the crime for which the defendant is being tried is generally inadmissible hearsay, but it may be admitted in the guilt-innocence phase of a trial "under exceptional circumstances that show a considerable guaranty of the hearsay declarant's trustworthiness." *Drane v. State*, 271 Ga. 849, 852 (2) (523 SE2d 301) (1999). No showing of trustworthiness was made in the case at bar — indeed, in light of evidence that Howard recanted his confession, it is unlikely such a showing could be made. Furthermore, any error must be harmful to be reversible error and, in the case at bar, the testimony trial counsel was prevented from eliciting from the police detective was presented to the jury when Howard was called as a defense witness and testified he had told police he had choked the victim and placed her in the freezer because he was angry the victim was helping his mother get drugs. Accordingly, we conclude the trial court did not commit reversible error when it granted the motion in limine.

3. Appellant next takes issue with the trial court's overruling of a hearsay objection made by defense counsel during the State's examination of the police officer who discovered the victim's body. The officer testified he had examined the freezer because he had "a weird feeling" and because the victim's neighbor and a friend of the victim had told him they had not seen the victim for several weeks. The trial court overruled the objection on the ground that the hearsay explained the officer's conduct. See OCGA § 24-3-2. To prevent an overly broad interpretation of OCGA § 24-3-2, this Court has ruled the statute is applicable only when "the conduct and motives of the actor are matters concerning which the truth must be found (i.e., are relevant to the issues on trial). . . ." *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982). "[O]nly in rare instances will the 'conduct' of an investigating officer need to be 'explained,' as in practically every

case the motive, intent, or state of mind of such an officer will not be 'matters concerning which the truth must be found.' " *Teague v. State*, 252 Ga. 534, 536 (1) (314 SE2d 910) (1984). See also *Render v. State*, 267 Ga. 848 (2) (483 SE2d 570) (1997). Neither the conduct nor the motive of the officer in the case at bar in examining the freezer was a matter concerning which the truth must be found, and the trial court erred when it permitted the officer to testify to hearsay to explain his conduct. However, in light of the fact that one of the two hearsay declarants subsequently testified to the fact that she had not seen the victim for two weeks prior to the discovery of her body, the officer's testimony is merely cumulative and it is highly probable its admission did not contribute to the guilty verdicts. *Teague v. State*, supra, 252 Ga. 534 (2). Compare *Render v. State*, supra, 267 Ga. 848 (2) (Court could not say that it was highly probable that the admission of the hearsay to explain the investigating officer's conduct did not contribute to the verdict).

4. Appellant complains the assistant district attorney prosecuting the case impermissibly placed her character in issue when he referred to her as "totally evil" in his opening statement. The failure to object at trial to the remark now challenged results in a waiver of the issue on appeal. *Burgeson v. State*, 267 Ga. 102 (4) (475 SE2d 580) (1996). Because appellant cites trial counsel's failure to object as an example of ineffective assistance of counsel (Division 6, infra), we note that a prosecutor's flights of oratory and figurative speech in opening statements and closing arguments are not reversible error. *Simmons v. State*, 266 Ga. 223 (6) (b) (466 SE2d 205) (1996), overruled on other grounds, *Wall v. State*, 269 Ga. 506 (500 SE2d 904) (1998).

5. Appellant testified at her trial and when asked by defense counsel if she had ever been convicted of a felony, replied she had not. Over the objection of defense counsel, the trial court permitted the State to cross-examine appellant about her prior convictions for misdemeanor deposit account fraud (OCGA § 16-9-20) and misdemeanor theft by taking that resulted from her having written personal checks knowing she did not have sufficient funds to honor the checks. On appeal, appellant contends the trial court's action violated OCGA § 24-9-20 (b), which states that "no evidence of general bad character or prior convictions shall be admissible unless and until the defendant shall have first put [her] character in issue." This statutory rule endorses the statutory declaration that "[t]he general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." OCGA § 24-2-2.

In *Jones v. State*, 257 Ga. 753 (363 SE2d 529) (1988), this Court outlined the situations in which the State could present evidence of a

526

defendant's prior convictions and not violate OCGA § 24-9-20 (b). The statutory language clearly authorizes the State to present evidence of prior convictions when a defendant makes her good character an issue at trial. A defendant makes her good character an issue by offering testimony of a witness as to the defendant's general good reputation in the community, or by testifying to her own general good reputation or to specific acts of past good conduct. *Jones v. State,* 257 Ga. at 758; *State v. Braddy,* 254 Ga. 366, 367 (330 SE2d 338) (1985). By offering evidence of good character, a defendant seeks to avail herself of the principle of law that "good character may of itself constitute a defense in behalf of an accused so as to generate reasonable doubt of guilt" (*Swett v. State,* 242 Ga. 228 (2) (248 SE2d 629) (1978)), and a jury instruction to that effect. *State v. Braddy,* supra.

The State may also use a defendant's prior convictions to impeach the testimony of the defendant by disproving the testimony. *Jones,* supra, 257 Ga. at 759 (1) (a). When presented with appellant's testimony that she had no felony convictions, the State was authorized to impeach her testimony by presenting evidence of her felony convictions or other evidence establishing that she had committed felonies. Id.; *Williams v. State,* 257 Ga. 761, 763 (363 SE2d 535) (1988). However, the State could not disprove appellant's testimony because her testimony was truthful — she had no prior felony convictions. Instead, the State contended that Division (1) (b) of *Jones* authorized its use of appellant's prior misdemeanor convictions to rebut appellant's testimony which the State contended implied she had no prior convictions. In effect, the State used appellant's prior misdemeanor convictions to impeach a negative inference the State drew from appellant's testimony. However, the exception set out in Division (1) (b) addresses the situation in which "the defendant testifies *and admits prior criminal conduct*" and implies that the conduct admitted is the defendant's only criminal conduct. Id. The defendant in the case at bar did not admit any prior criminal conduct and thus did not imply that the conduct admitted was her only past criminal conduct. She truthfully stated she had never been convicted of a felony, and her truthful statement is not testimony that implies there is criminal conduct. See *Hancock v. State,* 210 Ga. App. 528, 529 (2) (437 SE2d 610) (1993), where the Court of Appeals reversed a conviction because the State was permitted to use prior convictions to impeach the defendant, holding that "[b]y testifying that he had seen [cocaine] plenty of places, on TV and everywhere else, appellant did not *rule out* or exclude his own prior personal possession; however, neither did appellant, by his testimony, *admit* expressly or by implication that he had been engaged in any prior criminal misconduct." Compare *Francis v. State,* 266 Ga. 69 (2) (463 SE2d 859) (1995), where the State was authorized to rebut the defendant's testimony with

proof of multiple weapons offenses after the defendant implied on direct examination that he had only one conviction for a weapons offense when he testified, "I was advised to stay away from pistols [after the first weapons offense] . . . I try my best to stay away from pistols, you know, don't want to get myself in no trouble."[2]

Because appellant did not present good character evidence, testify untruthfully, or admit some but not all of her criminal record, the State was not authorized to introduce evidence of appellant's prior misdemeanor convictions, and the trial court erred in permitting the State to do so. However, the record shows compliance with the standard for finding non-constitutional error to be harmless in criminal cases — "the 'highly probable test,' i.e., that it is 'highly probable that the error did not contribute to the judgment.' [Cit.]" *Clark v. State*, 248 Ga. App. 88, 90 (2) (545 SE2d 637) (2001). Prior to the State bringing up appellant's misdemeanor convictions, appellant had testified that she was a drug addict; that she bought crack cocaine with the victim's money for them to share; that she cheated the victim in at least one of those drug transactions by smoking some before she returned to the victim's home to share the crack; that she sold and pawned the victim's property after her disappearance to buy drugs; that she wrote checks on the victim's checking account with permission so that the handwriting on the checks would not be the victim's, thereby allowing the victim to lie to her family about the money; that she wrote some checks on that account after the victim disappeared; that she lied to the victim's family about the victim's whereabouts so they would not come to the victim's house and so she would have time to replace money in the victim's checking account to cover the checks she had written on that account without the victim's permission; and that she took frozen food from the victim's freezer to her own house.

Given those admissions by appellant, it is highly probable the erroneous admission of evidence that appellant had been convicted of misdemeanors in connection with writing bad checks did not contribute to the jury's verdict.

6. Lastly, appellant contends she was denied the effective assistance of trial counsel. In order to prevail on her claim of ineffective assistance, appellant must show deficient performance on the part of counsel and prejudice to her defense resulting from that deficient

---

[2] The special concurrence, relying on *Brown v. State*, 237 Ga. 467 (228 SE2d 853) (1976), believes appellant's testimony "placed her good character in issue . . . and she opened the door to questions about [her prior criminal] record." The rationale used in *Brown* regarding character evidence was repudiated expressly in *Williams v. State*, supra, 257 Ga. at 763 (4), where this Court stated, "the statement of the defendant (denying prior robbery or theft) did not 'first put his character in issue,' as prohibited by OCGA § 24-9-20."

performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Fulton v. State*, 278 Ga. 58 (8) (597 SE2d 396) (2004). Appellant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct (*Mobley v. State*, 271 Ga. 577 (523 SE2d 9) (1999)), and counsel's decisions that amount to reasonable trial strategy do not constitute deficient performance. See *Moore v. State*, 279 Ga. 45 (8) (609 SE2d 340) (2005).

Appellant maintains her attorney performed deficiently when he allegedly failed to investigate the facts and the law adequately, failed to call certain witnesses, failed to meet with appellant "an adequate number of times," failed to review discovery with her, failed to call as a witness a crime lab technician to corroborate appellant's testimony that the victim was a drug user; failed to file a motion to sever the murder charges from the theft, forgery, and burglary charges; failed to seek a mistrial when the State used appellant's prior misdemeanor convictions and thereby injected appellant's character into the trial; failed to object when the State allegedly injected appellant's character into the trial in its opening statement and closing argument and when the State allegedly vouched for witnesses during closing argument.

At the hearing on the motion for new trial, appellant's trial counsel testified he had 27 years of experience as a prosecutor and defense attorney and had tried over 350 cases involving felonies punishable by life imprisonment. He met with appellant during her pre-trial incarceration for eight hours over four visits and kept in contact through written correspondence and telephone calls. He deemed he spent sufficient time with appellant because he gained much information about the case by reviewing the State's case file, which included statements appellant had made to investigators and the district attorney's office, as well as the transcript of the earlier trial of appellant's son for the murder of the victim, at which trial appellant testified. One of the witnesses suggested by appellant was interviewed by an investigator and the attorney determined he "didn't bear out." Another suggested witness had no personal knowledge of the events. The attorney did not see as necessary the testimony of a crime lab technician that metabolites of cocaine were found in the victim's bloodstream in light of the number of witnesses who had testified about the victim's involvement with crack cocaine. He stated his practice was to refrain from objecting to opposing counsel's closing argument, and any failure to object to the prosecutor's characterization of appellant was a matter of trial strategy since the trial court had indicated it was for the jury to decide. Decisions concerning the presentation of witnesses are matters of trial strategy and do not

constitute ineffective assistance when, as here, they are founded on legitimate evidentiary concerns. *Brooks v. State*, 265 Ga. 548 (4) (458 SE2d 349) (1995).

The failure to file a motion to sever does not require a finding of ineffective assistance since the decision whether to seek severance is a matter of trial tactics or strategy (*Johnson v. State*, 268 Ga. 416 (4) (490 SE2d 91) (1997)), and a decision amounting to reasonable trial strategy does not constitute deficient performance. *Moore v. State*, supra, 279 Ga. 45 (8). Since a defendant does not have an automatic right of severance of offenses if the offenses are based on a single transaction or the crimes evidence a common plan or scheme (*Sampson v. State*, 279 Ga. 8 (4) (608 SE2d 621) (2005)), counsel's decision not to seek severance amounts to reasonable trial strategy and as such cannot be the basis of a finding of ineffective assistance of counsel.

If trial counsel's failure to seek a mistrial when the State was permitted to introduce appellant's prior misdemeanor convictions (see Division 5, supra) was deficient performance, it cannot support a finding of ineffective assistance of counsel because appellant cannot show the requisite prejudice resulting therefrom. As we pointed out in Division 5, appellant's testimony rendered harmless the improper admission of the evidence. In the absence of prejudice, there is no ineffective assistance of counsel.

*Judgment affirmed. All the Justices concur, except Thompson and Hines, JJ., who concur specially.*

THOMPSON, Justice, concurring specially.

I write separately because I believe that Division 5 of the majority opinion unfairly hamstrings the State in cross-examining a defendant who implies that he or she has no criminal record.

Harris was asked by her attorney on direct examination if she had ever been convicted of a felony, and she replied that she had not. In my opinion, this testimony opened the door to allow the State to ask Harris on cross-examination whether she had been convicted of lesser crimes of moral turpitude. The majority opinion would slam that door.

In *Brown v. State*, 237 Ga. 467 (228 SE2d 853) (1976), defendant testified on direct examination that he "never robbed anybody" and "never stole anything from home or my mother." On cross-examination, the State then asked defendant if he had "ever broken the law" or was "ever in Reidsville." This Court found no error, holding:

[Defendant] on direct examination put his character in issue. He denied his involvement in the crime for which he was being tried and went further by adding that he had

"never robbed anybody" nor "stolen anything from home or my mother." These additional averments by the [defendant] placed his character in issue and justified cross examination on this point. Once a defendant "opens the door" for character evidence, specific events may be used in testing the extent and foundation of the defendant's knowledge and the correctness of his testimony on direct examination. [Cits.]

Id. at 468.

*Brown* was decided correctly and is applicable here. As in *Brown*, the defendant in this case placed her good character in issue on direct examination. Harris did more than simply deny that she committed the crime for which she was being tried; she went further and made additional statements in which she denied that she ever committed a felony. Compare *Lindler v. State*, 149 Ga. App. 155 (253 SE2d 833) (1979). In so doing, Harris implied that she had no prior criminal record, see *Jones v. State*, 257 Ga. 753, 759 (1) (b) (363 SE2d 529) (1988), and she opened the door to questions about that record. Compare *Lester v. State*, 145 Ga. App. 847, 849 (244 SE2d 880) (1978). It cannot be said, therefore, that the trial court erred in permitting the State to question Harris about her prior misdemeanor convictions.

HINES, Justice, concurring specially.

I write separately to address the analysis in Division 5 leading to the conclusion that the trial court erred in permitting the State to introduce evidence of Harris's prior misdemeanor convictions. There was no error.

The majority offers an unfounded and overly restrictive reading of *Jones v. State*, 257 Ga. 753 (363 SE2d 529) (1988), to conclude that the State was authorized to impeach Harris's testimony only by presenting evidence of her felony convictions or other evidence that she had committed felonies. But the clear import of Division (1) (b) of *Jones* is that if a defendant testifies in a manner that suggests that the defendant's criminal record is less serious than it actually is, the State has the right to challenge the accuracy of that testimony. The crux of the analysis must be whether by testifying on direct examination that she had never been convicted of a felony, Harris implied that she had no criminal record. If she did, her testimony was subject to rebuttal by the State by proof of other crimes that Harris committed. Id. at 759 (1) (b).

The inescapable conclusion is that by defense counsel's carefully circumscribed question on direct and Harris's truthful answer about the lack of felony convictions, the defense meant to imply that Harris was free of past criminal activity. Certainly, there is little chance that the jury would parse either the question or the response to make a

distinction between felonious deeds and lesser criminal acts. By its apparent strategy with regard to Harris's criminal record, the defense itself gave the State its entree to make its inquiry regarding that record.

DECIDED JUNE 30, 2005.

*Martin G. Hilliard,* for appellant.
*Spencer Lawton, Jr., District Attorney, Ronald M. Adams, Assistant District Attorney, Thurbert E. Baker, Attorney General, Raina J. Nadler, Assistant Attorney General,* for appellee.