**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**January 16, 2014**

# In the Court of Appeals of Georgia

A13A2340. PRICE v. THE STATE.

PHIPPS, Chief Judge.

David Price shot Christopher Neal with a gun, severely injuring him, and a jury found Price guilty of aggravated assault[1] and aggravated battery.[2] Sentenced therefor, Price maintains in this appeal that the shooting was justified and that the jury was therefore not authorized to find him guilty; additionally, Price maintains that his trial lawyer rendered ineffective assistance of counsel. For reasons that follow, we affirm.

---

[1] OCGA § 16-5-21 (a) (2) (defining aggravated assault). The indictment charged that Price had placed Neal in reasonable apprehension of immediately receiving a violent injury when he pointed a handgun at him.

[2] OCGA § 16-5-24 (a) (defining aggravated battery). The indictment charged that Price had maliciously caused bodily harm to Neal by seriously disfiguring his arms, chest, and abdomen when he repeatedly shot Neal with a handgun, causing bullet wounds to his arms, chest, and abdomen.

1. Where, as here, an appellant challenges the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[3]

So viewed, the evidence showed the following. The incident from which both charges arose occurred at Price's residence on May 25, 2008. Among the several individuals also living there were Price's girlfriend and Neal. Price was permitting Neal to live there in exchange for performing construction work on the house.

Price and Neal's relationship, however, was not without bouts of bickering, yelling, cursing, and threatening each other with physical violence. These bouts typically stemmed from disagreements about the way to repair the house or Neal's work ethic. Generally, these episodes did not escalate to physical altercations; and the day after any such episode, the two seemed to be good friends again. Price had warned Neal, however, that if Neal ever tried to hurt him, he would shoot Neal; and Neal knew that Price kept firearms in his bedroom.

---

[3] *Jackson v. Virginia*, 443 U. S. 307, 319 (III ) (B) (99 SCt 2781, 61 LEd2d 560) (1979) (emphasis in original).

2

About a month before the shooting underlying this case, during one of their arguments, Neal threw a cell phone at Price. Although the phone did not strike him, Price rushed to his bedroom. Neal quickly followed him, and discovered Price kneeling in front of his opened gun case and taking a gun out of it. Neal pinned Price down to the floor until Price's girlfriend, having heard the commotion, entered the bedroom, coaxed Neal off Price, then stood between the two men until Neal left the premises. Later that day, Neal returned to the residence without incident.

On the morning of the shooting, Price and Neal, along with two other men summoned by Price to help with the construction, were scheduled to install vinyl siding upon the house. Although the recruits had arrived by 8:30 a.m., Neal was still asleep. Price went to the side of the house and beat on the wall, hollering for Neal to get up. Neal did not awaken, however, until Price stood in Neal's bedroom doorway yelling at him to get out of bed. When Neal joined the others outside, an argument soon erupted between him and Price concerning the whereabouts of one of Price's construction tools. Price threatened Neal, "I'll blow your . . . head off." Neal threw an object at Price and retorted, "I dare you to shoot me." Although the object thrown by Neal did not strike him, Price rushed into the house. Discerning that Price was

3

headed for a gun, Neal quickly followed. All the while, as Neal testified, "I kept calling him an idiot, you're stupid, what do [you] think you're doing –."

Price went directly to his bedroom. By the time Neal entered the room, Price was kneeling at his closet, searching for a firearm. Meanwhile, as Neal recollected at trial, "I told him he was stupid he's going to try to shoot me, there's no point in it, you're being stupid, you're being retarded, you're being a dumbass." Neal testified that, when he realized that Price had nevertheless retrieved a gun and was aiming it at him, "[m]y only option that ran through my head was, take him down and get that gun away from him." Accordingly, Neal testified, "I charged him." Price discharged the gun multiple times, and eight bullets struck Neal. The bullets, inter alia, grazed Neal's "side," entered his abdomen, broke bones in his arm, and cracked a rib. At trial, Neal showed the jury the scars that remained on his arms, chest, and abdomen from the bullet wounds, as well as scars from numerous medical procedures he underwent during the ensuing six weeks of hospitalization.

The state adduced evidence that police officers summoned to the shooting scene arrived to find Neal lying on a bloody floor. As one officer observed, bones were "sticking out" from Neal's arm and "there was a hole in his stomach, there was a lot of blood coming out of it." Price claimed to an officer that the shooting had been

4

in self-defense, describing that he had pulled the trigger repeatedly until Neal fell down. That officer observed on Price's neck "two faint red lines," but determined that the marks were not large, were not scratches, and were not bleeding; the officer concluded that Price was in no need of medical attention. After further police investigation at the scene, Price was arrested and transported to jail.

In this appeal, Price maintains that the evidence established that he was justified in using deadly force against Neal. He points to evidence that Neal had "charged" him first, that he (Price) was suffering at the time from an earlier back injury, and that Neal had previously been violent toward him.

But in addition to the foregoing evidence, the state adduced Neal's testimony that, at the time in question, he (Neal) did not have a gun and that he did not reach for any of Price's guns. Further, Neal surmised, "[C]onsidering the situation, . . . I was not attacking him. I might have been . . . vulgar saying he was stupid, he was an idiot, and all that other stuff, but I mean, there's no reason to shoot somebody for calling them a dumbass or whatever."

When the state rested its case, Price neither testified nor called any witness. The parties' closing arguments were not transcribed, but the record shows that the court's final charge to the jury included instructions on the defense of justification.[4]

> "Whether a defendant justifiably used deadly force is a jury question."[5] In reaching [its] decision, the jury properly weighed the evidence and determined the credibility of all the witnesses who testified. Viewed in a light most favorable to the verdict, the evidence was sufficient to enable a rational trier of fact to find [Price] guilty of [aggravated assault and aggravated battery] beyond a reasonable doubt.[6]

Consequently, this contention presents no basis for disturbing the judgment of conviction.[7]

2. Price contends that the trial court erred in rejecting his claim of ineffective assistance of trial counsel. Price complains that his trial lawyer neither encouraged him to take the stand nor called any character witnesses.

---

[4] Price makes no claim on appeal that the jury was not properly charged on the defense of justification.

[5] *Timley v. State*, 268 Ga. 611 (1) (492 SE2d 214) (1997).

[6] *Gilchrist v. State*, 270 Ga. 287, 288 (1) (508 SE2d 409) (1998), citing *Jackson*, supra.

[7] See *Jackson*, supra; *Gilchrist*, supra.

6

Pursuant to *Strickland v. Washington*,[8]

[i]n order to prevail on this claim, [the defendant] must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. To meet the first prong of the required test, the defendant must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. To meet the second prong of the test, the defendant must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different.[9]

When Price's trial lawyer was asked at the hearing on motion for new trial why he had not called such witnesses, the lawyer recounted that, when the state rested its case, he determined and thus advised Neal that taking the stand and/or calling any character witness presented unwarranted risks. As the lawyer had determined, the evidence afforded the jury a basis to find that the shooting was justified, and testimony from Price and/or any character witness would not have significantly aided

---

[8] 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[9] *Kendrick v. State*, 287 Ga. 676, 680 (4) (699 SE2d 302) (2010) (citations and punctuation omitted).

7

the defense. Moreover, the lawyer recounted, he had anticipated that the state would cross-examine Price and/or the character witnesses in a manner that would remind the jury that: (i) during an earlier altercation with Neal, Price had attempted to get a gun; and (ii) on the day in question, Price had in fact shot Neal.

In the order denying Price's motion for new trial, the trial court correctly determined that Price had failed to overcome the strong presumption that trial counsel's decisions fell within the broad range of reasonable professional conduct. "Decisions concerning the presentation of witnesses are matters of trial strategy and do not constitute ineffective assistance when, as here, they are founded on legitimate evidentiary concerns."[10] In its order denying Price's motion for new trial, the trial court further noted that, at the new trial hearing, Price had neither testified nor called any of the individuals he claimed should have testified as character witnesses; hence, the trial court correctly determined that Priced had failed to demonstrate the requisite prejudice.[11]

---

[10] *Harris v. State*, 279 Ga. 522, 528-529 (6) (615 SE2d 532) (2005) (citation omitted).

[11] See *Ponder v. State*, 201 Ga. App. 388, 389 (1) (411 SE2d 119) (1991) (explaining that, in light of defendant's failure to proffer the testimony of the uncalled witness, defendant could not prove that there was a reasonable probability that the outcome of the trial would have been different).

Given the foregoing, Price has demonstrated no merit in his contention that the trial court erred in rejecting his claim of ineffective assistance of trial counsel.[12]

*Judgment affirmed. Ellington, P. J., and Branch, J., concur.*

---

[12] See *Strickland*, supra; *Harris*, supra at 528 (6) (concluding that trial court did not err in rejecting claim that trial counsel performed deficiently by failing to call certain witnesses, where decision was founded on legitimate evidentiary concerns); *Roberts v. State*, 263 Ga. 807, 808 (2) (b) (439 SE2d 911) (1994) (concluding that trial court did not err in rejecting claim that trial counsel rendered ineffective assistance by failing to call certain witnesses, where the decision not to call them was a strategic or tactical decision and appellant did not establish how the failure to call either witness would have affected the outcome of the case); *Ponder*, supra.